Filed 3/20/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S231644 |
| v. | ) | |
| | ) | Ct.App. 4/2 E062540 |
| ANDRE MERRITT, | ) | |
| | ) | San Bernardino County |
| Defendant and Appellant. | ) | Super. Ct. No. FVI1300082 |
| _____ | ) | |

A jury convicted defendant Andre Merritt of two counts of robbery and found true allegations that he personally used a firearm during both robberies. However, the trial court failed to give the standard jury instruction on the elements of robbery. The failure to instruct on the elements of a charged crime is serious constitutional error that impacts a defendant's fundamental right to a jury trial. We must decide whether the error can ever be found harmless.

In *People v. Cummings* (1993) 4 Cal.4th 1233 (*Cummings*), this court held similar error to be reversible per se. However, developments since then, including the high court decision in *Neder v. United States* (1999) 527 U.S. 1 (*Neder*), have made that holding obsolete. Obviously, the more elements that the instructions omit, the more likely it is that the error is prejudicial. But we see no need to hold categorically that error in failing to instruct on elements of the offense can never be found harmless. Instead, harmless error analysis applies if the error at issue does not " 'vitiat[e] *all* the jury's findings.' " (*Id*. at p. 11.) No such vitiation

SEE CONCURRING AND DISSENTING OPINIONS.

occurred here.  Although this jury did not receive the standard robbery instructions, it was instructed on the mental state required for the crime, on the need to find defendant's identity as the perpetrator, and on the elements of the firearm use allegation.  In such circumstances, the error is not reversible per se but is reversible unless harmless beyond a reasonable doubt.

At trial, defendant conceded that the perpetrator, whoever he was, was guilty of robbery, i.e., that all of the elements of robbery were present.  His defense was solely that he was not the perpetrator.  The crimes were recorded, making the concession virtually compelled.  Because of this concession and other circumstances, the error, serious though it was, was harmless beyond a reasonable doubt.

## I. FACTUAL AND PROCEDURAL HISTORY

On December 19, 2012, around 5:00 p.m., Kristen Wickum was working at the front counter of Storage Direct, in Victorville.  A man approached the front counter, pulled out a gun, and demanded money.  Frightened, Wickum gave the man around $338.  The man broke the office telephone, and then left.  He was wearing a "hoody," but Wickum could see his face.  Wickum identified defendant as the perpetrator from a photographic lineup, although she could not identify him at trial.  A video camera recorded the events.  The recording was played for the jury.

Around 6:20 p.m. the same day, Christian Lopez was working at La Mexicana, a convenience store in Victorville.  A man pointed a gun at Lopez and demanded money.  Fearful that the man would shoot him, Lopez gave him around $700.  The man kicked Lopez in the back as he left the store.  Lopez identified defendant in court as the perpetrator and had previously identified him from a photographic lineup.  An audio and video camera recorded the events.  The recording was played for the jury.

Defendant presented an alibi defense. Defendant's mother testified that the night of December 18, 2012, she picked him up from the local jail and took him home, where he and others celebrated his release from jail. The group smoked marijuana and played video games. The party lasted "at least two or three days." Defendant's mother testified that defendant never left the house from 5:00 p.m. to around 6:00 p.m., December 19, 2012. He was at home "on the computer." She said he did not leave the house for about four days after being released from jail. Defendant's brother testified that he specifically remembered defendant being home from around 4:30 p.m. to 6:30 p.m. the afternoon of December 19, 2012.

A San Bernardino County Sheriff's detective testified in rebuttal that he was present when defendant was interviewed. Defendant said he was at home "earlier in the day" on December 19, 2012, but then he walked to a friend's residence, where he spent the night of December 19.

Defendant was charged with two counts of robbery with a firearm use allegation. (Pen. Code, §§ 211, 12022.53, subd. (b).) The trial court did not give the jury the standard instruction on the elements of robbery. (CALCRIM No. 1600.) It did instruct the jury that the "specific intent and mental state required for the crime of robbery is the specific intent to permanently deprive the owner of the property when it is taken." It also instructed the jury on the firearm use allegation. The instruction required the jury to find that defendant either displayed the weapon in a menacing manner, hit someone with the weapon, or fired the weapon. (CALCRIM No. 3146.)

Additionally, the court instructed the jury that the "People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden you must find the defendant not guilty." It also instructed that the "People must prove that the defendant committed the crimes charged . . . . The defendant contends he did not commit

3

these crimes and that he was somewhere else when the crimes were committed. The People must prove that the defendant was present and committed the crimes with which he is charged. The defendant does not need to prove he was elsewhere at the time of the crime. If you have a reasonable doubt about whether the defendant was present when the crime was committed you must find him not guilty."

In his argument to the jury, the prosecutor said, "The instructions are that the defendant took property that was not his own. That the property was in the possession of another person. Property was taken from the other person or immediate presence. Property was taken against that person's will. The defendant used force or fear to take the property or prevent the person from resisting. And, finally, when the defendant used force or fear to take the property intended to deprive the owner of it permanently. You'll see the instruction in the instructions also that the employee owns the property of the business. So you have all this."

In his argument to the jury, defense counsel said, "Now, [the prosecutor] already went through the elements of robbery. Number 1, the defendant took property that was not his own. Two, the property was in the possession of another person. Three, the property was taken from the other person or her immediate presence. The property was taken against that person's will and the defendant used force or fear to take the property or to prevent the person from resisting. And when the defendant used force or fear to take the property, he intended to deprive the owner of it permanently. That's [legalese] for, he intended to steal it. Now, there is no question here, as [the prosecutor] said, no question these people were robbed, okay. Our only contention is with element number one that it was not the defendant. Not the defendant."

The jury convicted defendant of both counts of robbery and found the firearm use allegations true. The court sentenced him accordingly. On appeal, he

4

argued that the judgment must be reversed because the trial court failed to instruct the jury on the elements of robbery. The Attorney General conceded the error but argued it was harmless beyond a reasonable doubt. Relying on *Cummings*, *supra*, 4 Cal.4th 1233, the Court of Appeal found the error reversible per se and reversed the judgment.

We granted the Attorney General's petition for review.

## II. DISCUSSION

Because the court failed to give the standard instruction on the elements of robbery and, instead, instructed only on the required mental state element, the jury was not instructed on the following elements of robbery: (1) defendant took property that was not his own; (2) the property was in the possession of another person; (3) the property was taken from the other person or his or her immediate presence; (4) the property was taken against that person's will; and (5) the defendant used force or fear to take the property or to prevent the person from resisting. (Pen. Code, § 211; see CALCRIM No. 1600.)

Not instructing on these elements of robbery is constitutional error. The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense. (*People v. Mil* (2012) 53 Cal.4th 400, 409 (*Mil*).) It is, indeed, very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) All criminal defendants have the right to "a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." (*United States v. Gaudin* (1995) 515 U.S. 506, 510; accord, *Apprendi v. New Jersey* (2000) 530 U.S. 466, 477.)

"The right to have a jury make the ultimate determination of guilt has an impressive pedigree. Blackstone described 'trial by jury' as requiring that *'the truth of every accusation . . .* should afterwards be confirmed by the unanimous

5

suffrage of twelve of [the defendant's] equals and neighbors . . . .' 4 W. Blackstone, Commentaries on the Laws of England 343 (1769) (emphasis added). Justice Story wrote that the 'trial by jury' . . . right was designed 'to guard against a spirit of oppression and tyranny on the part of rulers,' and 'was from very early times insisted on by our ancestors in the parent country, as the great bulwark of their civil and political liberties.' [2 Story, Commentaries on the Constitution of the United States (4th ed. 1873) pp. 540-541.]" (*United States v. Gaudin*, *supra*, 515 U.S. at pp. 510-511, fn. omitted.)

We must decide whether error in failing to instruct on the elements of robbery is amenable to harmless error analysis and, if so, whether the error was harmless in this case.

## A. Is the Error Amenable to Harmless Error Analysis?

In *Cummings*, *supra*, 4 Cal.4th 1233, the codefendant, Gay, was convicted of multiple counts of robbery, attempted robbery, and conspiracy to commit robbery. As in this case, the court instructed the jury on the mental state required for robbery but otherwise failed to instruct on the elements of the crime. The failure to so instruct was obviously error. (*Id.* at pp. 1311-1312.) We considered the effect of the error.

After reviewing the then-existing United States Supreme Court decisions, we found the error not subject to harmless error analysis but instead reversible per se. We explained that the high court "decisions make a clear distinction between instructional error that entirely precludes jury consideration of an element of an offense and that which affects only an aspect of an element. Moreover, none suggests that a harmless error analysis may be applied to instructional error which withdraws from jury consideration substantially all of the elements of an offense and did not require by other instructions that the jury find the existence of the facts

6

necessary to a conclusion that the omitted element had been proved." (*Cummings, supra*, 4 Cal.4th at p. 1315.) Accordingly, and "regardless of the merits of the People's argument that Gay did not dispute the existence of the predicate facts and that the evidence overwhelmingly established all of the elements of robbery, attempted robbery, and conspiracy to commit robbery," we reversed Gay's robbery-related convictions. (*Ibid.*)

Much has happened since we decided *Cummings, supra*, 4 Cal.4th 1233. In *Neder, supra*, 527 U.S. 1, the trial court "erred in refusing to submit the issue of materiality to the jury with respect to those charges involving tax fraud." (*Id.* at p. 4.) The United States Supreme Court "h[e]ld that the harmless-error rule of *Chapman v. California*, 386 U.S. 18 (1967), applies to this error." (*Ibid.*)

The high court noted that it had previously "recognized that 'most constitutional errors can be harmless.' [Citation.] '[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis.' [Citation.] Indeed, we have found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases.' [Citations.] [¶] The error at issue here — a jury instruction that omits an element of the offense — differs markedly from the constitutional violations we have found to defy harmless-error review. . . . [¶] Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." (*Neder, supra*, 527 U.S. at pp. 8-9.)

*Neder* compared the error before it to the error in *Sullivan v. Louisiana* (1993) 508 U.S. 275 — a defective reasonable doubt instruction — that the court had found reversible per se. It explained that the *Sullivan* court "concluded that

7

the error was not subject to harmless-error analysis because it 'vitiates *all* the jury's findings,' [citation], and produces 'consequences that are necessarily unquantifiable and indeterminate,' [citation].  By contrast, the jury-instruction error here did not 'vitiat[e] *all* the jury's findings.' " (*Neder*, *supra*, 527 U.S. at p. 11.)

The *Neder* court agreed with the Government's argument "that the absence of a 'complete verdict' on every element of the offense establishes no more than that an improper instruction on an element of the offense violates the Sixth Amendment's jury trial guarantee.  The issue here, however, is not whether a jury instruction that omits an element of the offense was error (a point that is uncontested . . . ), but whether the error is subject to harmless-error analysis." (*Neder*, *supra*, 527 U.S. at p. 12.)  Noting that the defendant had not contested materiality, the court also stated that "[r]eversal without any consideration of the effect of the error upon the verdict would send the case back for retrial — a retrial not focused at all on the issue of materiality, but on contested issues on which the jury was properly instructed." (*Id*. at p. 15.)  It added that, under the circumstances, a reversible per se rule "would justify the very criticism that spawned the harmless-error doctrine in the first place:  'Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it.'  R. Traynor, The Riddle of Harmless Error 50 (1970)." (*Id*. at p. 18.)

Accordingly, the court concluded that the error could be found harmless if the reviewing court determines beyond a reasonable doubt that it did not contribute to the verdict. (*Neder*, *supra*, 527 U.S. at p. 15.)  Or, slightly differently, the court described the harmless error inquiry as this:  "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?" (*Id*. at p. 18.)

Several years after it decided *Neder*, *supra*, 527 U.S. 1, the high court reaffirmed its holding. (*Hedgpeth v. Pulido* (2008) 555 U.S. 57.) It viewed *Neder* as "mak[ing] clear that harmless-error analysis applies to instructional errors so long as the error at issue does not categorically ' "vitiat[e] *all* the jury's findings." ' " (*Id*. at p. 61.)

More recently, this court considered whether instructional error that omitted *two* elements from the jury charge (in that case, two elements of a special circumstance allegation) was also amenable to harmless error review. (*Mil*, *supra*, 53 Cal.4th 400.) We concluded it was, although we found the error prejudicial in that case.

In *Mil*, we rejected the defendant's argument that *Neder*, *supra*, 527 U.S. 1, permits a harmless error assessment only when a single element was omitted. "In our view, the omission of two elements from the jury charge 'differs markedly' from the constitutional violations that have been found to defy harmless error review. (*Neder*, *supra*, 527 U.S. at p. 8.) . . . [A]n instruction that omits two elements of an offense or special circumstance allegation, like an instruction that omits only one element, 'does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' (*Id*. at p. 9.) Where an instruction omits some elements of the offense or allegation, but the elements were uncontested and supported by overwhelming evidence, it would not necessarily follow that the trial was fundamentally unfair or an unreliable vehicle for determining guilt or innocence." (*Mil*, *supra*, 53 Cal.4th at pp. 410-411.) "[T]he incursion on the right to a jury trial occurs whether the instruction omits one element *or* multiple elements of the offense, yet both the high court and this court have already held that the omission of *an* element of the offense is amenable to harmless error analysis." (*Id*. at p. 411, citing *Neder*, at p. 13, and *People v. Flood* (1998) 18 Cal.4th 470, 490.)

As did *Neder*, *supra*, 527 U.S. 1, we distinguished *Sullivan v. Louisiana*, *supra*, 508 U.S. 275 — where the high court found a defective reasonable doubt instruction reversible per se — on the basis that in *Sullivan*, the error undermined every jury finding underlying the guilty verdict, while the error before us did not do so. We explained that in contrast to the *Sullivan* error, "an instruction that omitted some — but not all — of the elements of an offense or special circumstance allegation would prevent a jury finding on the affected elements but would not necessarily vitiate *all* the jury's findings." (*Mil*, *supra*, 53 Cal.4th at p. 411.) (The phrase "but not all" in this discussion should be interpreted as referring to an instruction that omitted every *fact* the jury had to find to convict, including identity. Identity is generally not considered an element of the crime (see *People v. Ledesma* (2006) 39 Cal.4th 641, 721), but, whatever label it is given, it is a *finding* the jury must make beyond a reasonable doubt in all criminal trials.) "Although it may prove more difficult, as a practical matter, to establish harmlessness in the context of multiple omissions, that is not a justification for a categorical rule forbidding an inquiry into prejudice." (*Mil*, at p. 412.)

Given the different ways in which elements can be described or subdivided, we noted the "utter artificiality" of a rule that would limit the harmless inquiry to the omission of a single element. (*Mil*, *supra*, 53 Cal.4th at p. 412.) "The critical inquiry, in our view, is not the *number* of omitted elements but the *nature* of the issues removed from the jury's consideration. Where the effect of the omission can be 'quantitatively assessed' in the context of the entire record (and does not otherwise qualify as structural error), the failure to instruct on one or more elements is mere ' "trial error" ' and thus amenable to harmless error review. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 307-308.)" (*Id.* at pp. 413-414.)

We rejected the defendant's argument that permitting harmless error review "will encourage other incursions on the right to a jury trial and erode the incentive

to instruct with due care . . . . An instructional error involving multiple elements, like an error involving a single element, will be deemed harmless only in unusual circumstances, such as where each element was undisputed, the defense was not prevented from contesting any or all of the omitted elements, and overwhelming evidence supports the omitted element. The possibility that this set of circumstances might occasionally exist is unlikely to affect the practices of attorneys or courts in the general run of criminal trials, which, after all, are conducted to resolve *contested* issues of fact underlying the elements of a crime. On the other hand, holding the error harmless under these circumstances 'does not "reflect a denigration of the constitutional rights involved" '; rather, 'it "serve[s] a very useful purpose insofar as [it] block[s] setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." ' (*Neder*, *supra*, 527 U.S. at p. 19.)" (*Mil*, *supra*, 53 Cal.4th at p. 414.)

We distinguished, but did not overrule, *Cummings*, concluding that removing *two* elements from the jury's consideration was different from "the omission of 'substantially all of the elements of an offense,' as occurred in *Cummings*, *supra*, 4 Cal.4th at page 1315." (*Mil*, *supra*, 53 Cal.4th at p. 415.) Now that the same error that occurred in *Cummings* has occurred in this case, the time has come to decide whether *Cummings* should still be followed today.

We believe the rule established in *Cummings*, *supra*, 4 Cal.4th 1233, is as artificial as the rule the defendant urged in *Mil*, *supra*, 53 Cal.4th 400. What *Neder* said about the omission of a single element, and *Mil* about the omission of two elements, applies equally to the omission of more than two elements. As will be seen in the next part, where we consider the question of prejudice, the error here does not " 'defy' " harmless error analysis (*Neder*, *supra*, 527 U.S. at p. 7), but is readily susceptible to such analysis. Certainly, the more elements that are

11

omitted, the less likely it is that the error is harmless, but so long as the error does not vitiate *all* of the jury's findings, it is amenable to harmless error analysis.

The error here vitiated some of the jury's findings, but not all of them. It did not vitiate the finding that defendant acted with the mental state required for robbery. It did not vitiate the finding that he personally used a firearm during the commission of the offenses. Perhaps crucially, it did not vitiate the finding on the only *contested* issue at trial: defendant's identity as the perpetrator.

In urging this court to follow *Cummings*, defendant argues that because "*Neder* repeatedly emphasized the issue there was the omission of 'an' element or a 'single' element," it does not control this case. It is true *Neder* repeatedly uses the singular in describing the missing element, but that is because only one element was missing. As explained, however, its reasoning applies to the omission of multiple elements as long as the omissions do not vitiate all of the jury's findings.

Defendant also argues that subsequent high court decisions, such as *Blakely v. Washington* (2004) 542 U.S. 296, *Ring v. Arizona* (2002) 536 U.S. 584, and *Apprendi v. New Jersey*, *supra*, 530 U.S. 466, that expanded defendants' jury trial rights, have made *Neder* "no longer valid." Those cases found a violation of the jury trial right in certain situations. But as *Neder* itself explained, the issue is not whether the error violated a jury trial right — it did — "but whether the error is subject to harmless-error analysis." (*Neder*, *supra*, 527 U.S. at p. 12.) The cases defendant cites say nothing about this issue. They do not undermine *Neder*. Indeed, the high court has specifically held that the erroneous failure to submit a sentencing factor to the jury in violation of *Blakely v. Washington* is subject to harmless error analysis under *Neder*. (*Washington v. Recuenco* (2006) 548 U.S. 212, 218-222; see *Hedgpeth v. Pulido*, *supra*, 555 U.S. 57 [reaffirming *Neder*].)

We agree with the dissent that an instructional error or omission that amounts to the *total* deprivation of a jury trial would be structural error, that is, reversible per se. (Dis. opn., *post*, at p. 5.) That is not remotely what occurred here. Both attorneys described the elements of robbery to the jury, and did so accurately and completely. (See discussion, *post*, at p. 15.) The error did not vitiate three of the jury's findings: (1) that defendant acted with the mental state required for robbery, (2) that he used a firearm, and (3) that he was the perpetrator. Defendant received a full and fair jury trial, with complete and correct instructions, on the question of identity, the only *contested* issue at trial. There was no total deprivation of a jury trial.

In response to the dissent's rhetoric, we see nothing in this opinion that will encourage trial courts simply to tell the jury to convict the defendant of something if it finds he or she did something, anything, wrong, or to permit appellate courts to affirm convictions based on such instructions. (Dis. opn., *post*, at pp. 9-11.) Again, that is not remotely what occurred here. (See *Neder*, *supra*, 527 U.S. at p. 17, fn. 2 [the court's response to the dissent's similarly exaggerated claims].) We are also not engaging in appellate factfinding any more than did the court in *Neder*. Instead, we are assessing what effect the error had on the verdict.

The out-of-state cases the dissent cites are either consistent with this opinion or are distinguishable. *State v. Bunch* (N.C. 2010) 689 S.E.2d 866 is consistent with this opinion. That case found *harmless* the failure to instruct on multiple elements of the offense. As the dissent notes (dis. opn., *post*, at p. 6), the *Bunch* court did not additionally hold that the failure to instruct on all of the elements could be found harmless. That question was not before the court. In *People v. Duncan* (Mich. 2000) 610 N.W.2d 551, the jury convicted the defendant of two counts of murder and two counts of what the appellate court called "felony-firearm." (*Id*. at p. 552.) But the trial court never instructed the jury on any of the

13

elements of felony firearm. As far as the opinion indicates, it does not appear that the parties discussed with the jury that crime separately from the main murder charge or that the defense made any concession. The jury was only given the "title of the crime." (*Id*. at p. 555.) The Michigan Supreme Court found the error reversible per se. Among the reasons it gave is that it is "possible that the failure to provide any of the elements of the charge may have suggested to the jury that the two charges were tie-barred, i.e., if the jury found defendant guilty of murder, they were then to find defendant guilty of felony-firearm." (*Ibid*.) Here, by contrast, there was no tying of a secondary crime to a main crime, and, as discussed, the jury was not entirely ignorant of the elements of the charged crime. Finally, in *Harrell v. State* (Miss. 2014) 134 So.3d 266, the Mississippi Supreme Court rejected *Neder*, *supra*, 527 U.S. 1, entirely and, as a matter of independent state grounds, "h[e]ld that it is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element." (*Harrell*, at p. 275.) We have not rejected *Neder*.

For these reasons, we conclude that the rule of *People v. Cummings*, *supra*, 4 Cal.4th 1233, 1311-1315, has no continuing validity. The error of this case, like the errors in *Neder*, *supra*, 527 U.S. 1, and *Mil*, *supra*, 53 Cal.4th 400, is amenable to harmless error analysis. In the next part, we undertake that analysis.

### B. Is the Error Prejudicial in This Case?

We must determine whether it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error. (*Neder*, *supra*, 527 U.S. at p. 18.) The circumstances here compel the conclusion the error was harmless.

The jury was not entirely ignorant of the elements of robbery. Although the court did not instruct on the elements (except the mental state), attorneys for both

parties accurately described the elements of robbery in front of the jury. The court instructed the jury to follow its instructions rather than the attorneys' comments on the law, but only to the extent those comments conflicted with the court's instructions. Because the court gave no instruction on most of the elements of robbery, the attorneys' comments did not conflict with any instruction. Accordingly, the jury might well have considered these comments in its deliberations. (See *People v. Jennings* (2010) 50 Cal.4th 616, 678 [the prosecutor's discussion of the missing element a factor to consider in determining prejudice].) We do not suggest this circumstance *cured* the error. It is the court's duty to instruct the jury, not the parties'. But it is a factor to consider in determining prejudice.

After reviewing the elements, defense counsel, in an obvious attempt to maintain credibility with the jury and to focus its attention on the defense theory of the case — defendant was not the perpetrator — expressly conceded that the perpetrator, whoever he was, committed robbery. "One situation in which instructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element." (*People v. Flood*, *supra*, 18 Cal.4th at p. 504; see *Connecticut v. Johnson* (1983) 460 U.S. 73, 87.)

The evidence presented to the jury virtually forced this concession. Both crimes were captured on tape that was played to the jury. The recordings were such that defendant could argue he was not the person in the recording, but they did not allow him to argue credibly that no robbery occurred. The recording of the Storage Direct incident, which had no audio, shows the perpetrator wielding a gun and the victim handing over money before lying down on the floor. It also shows the perpetrator breaking the office telephone. The recording of the La Mexicana incident, which included audio, shows the perpetrator wielding a gun, yelling at

15

the victim to lie down, demanding that the victim hand over money, and threatening to shoot the victim. The victim asks the perpetrator not to hurt him. The perpetrator kicks the victim in the back before leaving the store.

Defendant knew what the elements of robbery were, and he had the opportunity to present any evidence he wished on the subject. "[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." (*Neder*, *supra*, 527 U.S. at p. 17.)

Moreover, what the jury, properly instructed, necessarily found supports the conclusion the error did not contribute to the verdict. The jury resolved the only contested issue in the prosecution's favor when it found defendant was the perpetrator. (See *People v. Flood*, *supra*, 18 Cal.4th at p. 505.) It also found that defendant acted with the mental state required for robbery and used a firearm during the commission of the offenses. No reasonable jury that made all of these findings could have failed to find the remaining elements of robbery. (*People v. Chun* (2009) 45 Cal.4th 1172, 1204-1205.)

Finally, the evidence that both robberies occurred was overwhelming and uncontroverted. Both victims provided unchallenged testimony that they were robbed, and the jury could view the incidents on videotape. "[A] court, in typical appellate-court fashion, asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." (*Neder*, *supra*, 527 U.S. at p. 19.) Here, the record contains no such evidence with respect to the omitted elements of robbery.

For all of these reasons, we find the error harmless beyond a reasonable doubt. Because all of these circumstances exist in this case, and combined they

16

show the error to be harmless, we express no opinion on what other circumstances in other cases might or might not permit a finding of harmless error.

We stress that this kind of error should never occur. One of the trial court's most basic duties is to instruct the jury on the elements of the crime. We assume the error here was solely due to inadvertence. No doubt the court intended to give the necessary instruction but somehow neglected to do so, and no one noticed. But a reviewing court should not have to go through this exercise. Certainly, a jury trial is a difficult undertaking. There is much to think about and much to do, often under considerable pressure. But the instructions are an important part of the process and care should be taken to ensure that they are correct and actually given. We also believe the prosecution bears responsibility for ensuring the jury is properly instructed. It is in its best interest to make sure the record does not contain obvious and serious error.

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion, including resolving any remaining issues.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CORRIGAN, J.**
**KRUGER, J.**

17

**CONCURRING OPINION BY LIU, J.**

The court characterizes the main question before us as whether the trial court's failure to instruct the jury on the elements of robbery "is amenable to harmless error analysis." (Maj. opn., *ante*, at p. 13.) Although I agree that some form of harmless error review is appropriate, I believe such review is more circumscribed in this context than today's opinion suggests.

In *Neder v. United States* (1999) 527 U.S. 1 (*Neder*), the high court held that a failure to instruct the jury on a single element of a criminal offense is subject to harmless error analysis. A reviewing court, in asking whether a "rational jury would have found the defendant guilty absent the error," may look to whether "uncontroverted evidence" supports a finding on the omitted element. (*Id.* at pp. 18–19.) In *People v. Mil* (2012) 53 Cal.4th 400 (*Mil*), we extended *Neder*'s holding to the omission of two elements of a criminal offense, reasoning that "an instruction that omitted some — but not all — of the elements of an offense or special circumstance allegation would prevent a jury finding on the affected elements but would not necessarily vitiate *all* the jury's findings." (*Mil*, at p. 411; see *Neder*, at p. 11 [restating the holding in *Sullivan v. Louisiana* (1993) 508 U.S. 275, 281, that an instructional error that " 'vitiat[es] *all* the jury's findings' " is not subject to harmless error analysis].)

Today's opinion concludes that the logic of *Neder* and *Mil* "applies equally to the omission of more than two elements" of an offense and thus undermines *People v. Cummings* (1993) 4 Cal.4th 1233, which held that an instructional error

1

that withdraws from the jury "substantially all of the elements of an offense" is not subject to harmless error analysis. (*Id.* at p. 1315.) But this case does not require us to reconsider *Cummings*. Although that case also involved the omission of an instruction on robbery, the case before us differs in one important respect: Here, unlike in *Cummings*, defense counsel expressly conceded that a robbery had taken place. In closing argument, defense counsel correctly stated for the jury each of the elements of robbery, repeating what the prosecutor had said. Defense counsel then said there was " 'no question these people were robbed, okay. Our only contention is with element number one that it was not the defendant. Not the defendant.' " (Maj. opn., *ante*, at p. 4.) The defendant in *Cummings* "did not dispute that the offenses shown by the evidence were robbery" (*Cummings*, at p. 1312), but a decision not to contest one or more elements of an offense is not tantamount to a concession and does not relieve the prosecution of its burden of proof (*Estelle v. McGuire* (1991) 502 U.S. 62, 69).

In light of defense counsel's correct articulation of the elements of robbery, followed by an express concession that a robbery had occurred, this is a case where "a defendant himself has taken the [conceded] issue . . . away from the jury," leaving the jury with only the question of identity. (*Connecticut v. Johnson* (1983) 460 U.S. 73, 87 (plur. opn.); see *People v. Flood* (1998) 18 Cal.4th 470, 504 ["One situation in which instructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element."].) It is on the basis of defense counsel's concession (and there is no allegation here of ineffective assistance of counsel) that I find the instructional error harmless beyond a reasonable doubt.

The court today notes, among its reasons for finding the error harmless, that "the evidence that both robberies occurred was overwhelming and uncontroverted." (Maj. opn., *ante*, at p. 16.) This is unnecessary to the holding

2

and, in my view, unwarranted. It is true that *Neder* and *Mil* authorize reviewing courts, in applying harmless error analysis, to consider whether the evidence on the omitted element or elements was "overwhelming" and "uncontested." (*Neder*, *supra*, 527 U.S. at p. 17; see *Mil*, *supra*, 53 Cal.4th at p. 414.) However, there is no escaping the fact that when a reviewing court considers the strength of the evidence in order to fill a gap in the jury's findings, the court is wading into the factfinding role reserved for the jury. (See *Neder*, *supra*, 527 U.S. at p. 18; *id.* at p. 27 (conc. opn. of Stevens, J.); *id.* at pp. 34–39 (dis. opn of Scalia, J.); see also *People v. Jackson* (2014) 58 Cal.4th 724, 790 (conc. & dis. opn. of Liu, J.) ["The risk of an appellate court usurping the jury's role becomes especially great when harmless error analysis focuses not on whether error might have affected the jury's decisionmaking, but on whether there was overwhelming evidence to support the result."].) The high court in *Neder* acknowledged that the failure to instruct the jury on an element of the offense "infringe[s] upon the jury's factfinding role" but concluded that "an appropriate balance" must be struck "between 'society's interest in punishing the guilty [and] the method by which decisions of guilt are to be made.' " (*Id.* at p. 18.) Although appellate factfinding is permitted to cure a failure to instruct on one or two elements, at some point the severity of the error must tip the balance the other way. A reviewing court goes too far in exercising the jury's function when it undertakes its own evaluation of the evidence in determining whether a wholesale failure to instruct the jury on the elements of an offense is harmless.

In any event, today's opinion is a narrow one. It does not hold that a reviewing court may find that a trial court's failure to instruct on all elements of a crime is harmless solely or primarily on the strength of the evidence. Rather, in finding the error harmless in this case, the opinion considers the evidence together with several other factors: defense counsel expressly conceded a robbery had

3

occurred, both parties correctly explained the elements of robbery to the jury, the jury had been instructed on the mental state of robbery, and the jury found that defendant used a firearm during the commission of the offense.  (Maj. opn., *ante*, at pp. 13–15.)  It is "[f]or *all* of these reasons" that the court "find[s] the error harmless beyond a reasonable doubt.  Because *all* of these circumstances exist in this case, and *combined* they show the error to be harmless, we express no opinion on what other circumstances in other cases might or might not permit a finding of harmless error."  (*Id.* at pp. 16–17, italics added.)

For the reasons above, I concur in the judgment.

**LIU, J.**

**DISSENTING OPINION BY CUÉLLAR, J.**

Ask almost any lawyer or well-informed citizen and she will tell you that criminal adjudication in the United States is supposed to work something like this: Legislators define crimes, judges explain to juries the definitions of crimes a defendant is accused of committing, and jurors decide whether, beyond a reasonable doubt, the defendant engaged in the criminal acts charged. (See Pen. Code, § 6; *United States v. Hudson & Goodwin* (1812) 11 U.S. (7 Cranch) 32, 34; see also *In re Winship* (1970) 397 U.S. 358, 361 ["The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation."].) In this familiar and longstanding framework Americans find far more than just a guide to courtroom dramas and police procedural shows. Instead this framework preserves a link between criminal justice and democracy — specifically, between criminal statutes enacted by the public's democratic representatives and the integrity of an adjudicatory process assigning a specific role to judges and another to community members serving as jurors.

That process broke down completely in this case. Legislators had indeed defined the crime of robbery, but the jurors who convicted Andre Merritt of that crime were at no point given this definition by the judge. Merritt was charged with two robberies, and defense counsel argued at trial that someone other than Merritt had committed the crimes. The judge then told jurors that they had to find whether Merritt committed "the crime of robbery." Though at certain points the

1

lawyers offered arguments about what constitutes robbery, the judge never told the jurors what the law required. And so without the benefit of instruction on the concept of "robbery" — or indeed, even a literal recitation of the statutory elements — jurors were left to decide whether the defendant committed whatever they each felt robbery was. The jury then found Merritt guilty, and the judge sentenced him to over 19 years in prison for these crimes.

The jury that made Merritt a criminal found guilt based on little more than the title of a crime — "robbery," a word the judge used several times but never once defined. So Merritt's trial lacked the connection to democratic accountability of a jury applying a crime definition specified by their elected representatives. The jurors were sent to deliberate about whether Merritt committed robbery without any judicial instruction on how California defines that particular crime. When a jury's deliberation is in no way structured by the facts that the Legislature singled out as necessary for a conviction, jurors might as well have been asked nothing more than, "do you think the defendant is guilty of anything?" This problem of unstructured, unmoored jury deliberation is prejudicial in a way that cannot be measured.

The rule that jurors must decide if the defendant committed the charged crime is enshrined in both the United States Constitution and California's Constitution. (See U.S. Const., 6th Amend; Cal. Const., art. I, § 16.) These twin "guarantees of jury trial in the Federal and State Constitutions reflect a profound judgment about the way in which law should be enforced and justice administered." (*Duncan v. Louisiana* (1968) 391 U.S. 145, 155.) I agree with the majority that those guarantees were broken in this case. Where I must part ways with the majority is the conclusion that this error was harmless. The majority uses video evidence to decide a question that the jury was never asked — whether Merritt's conduct met California's definition of robbery. In my view, finding guilt

2

in this way "invade[s] the truth-finding task assigned solely to juries in criminal cases." (*Carella v. California* (1989) 491 U.S. 263, 265.)

By concluding that even a total failure to define a crime can be harmless, the majority overrules a quarter century of our precedent. This court held in *People v. Cummings* (1993) 4 Cal.4th 1233 that "instructional error which withdraws from jury consideration substantially all of the elements of an offense" is never harmless. (*Id.* at p. 1315.) The facts in *Cummings* were identical in all material respects to those here. Both juries convicted a defendant of robbery without any instruction on this crime's definition, though both juries were given an intent instruction. At Merritt's trial, this instruction told jurors that the "mental state required for the crime of robbery is the specific intent to permanently deprive the owner of the property." But what was "the crime of robbery"? The judge never explained. Jurors were thus left to believe that they could define that term — which the judge repeated over and over again but gave no definition of — on their own. *Cummings* held that "never" was the right answer to the question of when this kind of error could be harmless — even in cases where the defendant "did not dispute the existence of the predicate facts" or where "the evidence overwhelmingly established all of the elements." (*Ibid.*)

About a month after our *Cummings* decision, the high court ruled that a judge misstating the standard of proof for finding a crime can never be harmless either, because this error "vitiates *all* the jury's findings." (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 281 (*Sullivan*).) Today's majority draws more on the later *Neder v. United States* (1999) 527 U.S. 1 (*Neder*) decision than on *Sullivan*. The *Neder* jury was given a definition of the crime (intentionally filing a false tax return) but with one missing element (the materiality of the falsehood). The high court explained that this failure to *complete* the definition of a crime could

3

sometimes be harmless, since the missing piece "did not 'vitiat[e] *all* the jury's findings.' " (*Id.* at p. 11.)

Our court later extended *Neder* to hold that failure to charge not one but two elements of the offense could be harmless as well. (See *People v. Mil* (2012) 53 Cal.4th 400, 417.) Contrary to the majority's suggestion, *Mil* never questioned *Cummings*. Instead, we repeatedly quoted the "substantially all of the elements" rule from *Cummings* and applied that rule to the case. (*Id.* at pp. 413, 415.) Our opinion also hinted that "an instruction that omitted . . . all . . . of the elements of an offense" (rather than one missing element as in *Neder* or two as at Mil's trial) would " 'necessarily vitiate *all* the jury's finding' " as to the crime's definition. (*Id.* at p. 411.) This of course is the issue that the majority decides in the opposite way today. *Mil* even reasoned that "the most persuasive response to defendant's contention that the harmless-error inquiry must be limited to the omission of a single element is the utter artificiality of the line he purports to draw." (*Id.* at p. 412.) We then explained that the *Cummings* rule "derive[s] not from an arbitrary counting game, but from the effect of the omission on the function and importance of the jury trial guarantee." (*Id.* at p. 413.) In cases like Merritt's where jurors are given no definition whatsoever of the crime, there is no "arbitrary counting game," since there is not even a single element to count. In cases like this, "the most persuasive" rationale for *Mil*'s holding is absent. (*Id.* at p. 412.)

The majority's contention is that "[w]hat *Neder* said about the omission of a single element, and *Mil* about the omission of two elements, applies equally to the omission of more than two elements." (Maj. opn., *ante*, at p. 11.) This formulation understates the error in this case, which was a failure to give not just a few but *all* the elements. Failure to give two elements is not meaningfully distinct from failure to give one. But failure to give *any* definition of a crime is a different matter altogether. In cases where a court gives a partial definition, the jury's

4

deliberation is still structured by what the law requires for a conviction. In those cases, courts can ask whether the partial definition provided enough guidance that the jury's verdict can be salvaged. But the error in Merritt's case — total failure to tell the jury *any* of how the Penal Code defines the crime they must find — "vitiates *all* the jury's findings." (*Sullivan*, *supra*, 508 U.S. at p. 281.) In a case like this, we should give no weight to the jury's finding that the defendant committed the crime, since this finding had no basis in any instruction provided by the court explaining the crime's definition in the Penal Code.

In ruling on such deprivations of constitutional rights courts routinely distinguish between partial deprivations, which are sometimes treated as harmless, and total deprivations of the same right, which are treated as never harmless. For example, the complete deprivation of the Sixth Amendment right to counsel is never harmless, but the absence of a lawyer for part of trial can be harmless. (See *People v. Lightsey* (2012) 54 Cal.4th 668, 699-702.) Along the same lines, even if the "*complete denial* of summation amounts to structural error," this does not mean "the *restriction* of summation also amounts to structural error." (*Glebe v. Frost* (2014) 574 U.S. __, __ [135 S.Ct. 429, 431].) Likewise, we recently held that while "partial denial of the right to a previous trial transcript is subject to harmless error review, . . . the total denial of the same right would be structural error." (*People v. Reese* (March 9, 2017, S230259) ___ Cal.5th. ___ [p. 12].) As *Reese* explained, this is because "errors can shift between being structural or subject to harmless error review depending on the extent of the violation." (*Id.* at p. 10.) At Merritt's trial, the violation was as total as possible: the jury was given no definition whatsoever of the charged crime. While *Neder*'s harmless error analysis can be extended to other cases with a partial definition (one or two missing elements), extending it to total deprivations strays into a whole different

5

category.  In cases with no definition, the jury made no findings that can be leveraged into a lawful verdict.

We are not the first court to consider whether *Neder* makes failure to define a crime harmless.  Every state high court to consider this question has rejected the view the majority announces today.  The Michigan Supreme Court ruled after *Neder* that a "trial court's failure to instruct regarding *any* of the elements" of a crime sends "the jury to its deliberative duties deprived of its essential tool" and leaves "the jury to guess what the prosecuting attorney might be required to prove."  (*People v. Duncan* (Mich. 2000) 610 N.W.2d 551, 554.)  The majority suggests that trial counsel's arguments might explain the *Duncan* holding.  Yet no opinion in *Duncan* mentioned counsel's arguments — perhaps because no judge considered those arguments relevant to the question at issue.  What the Michigan Supreme Court actually said in its holding is contrary to the rule the majority announces today.  (*See Duncan*, 610 N.W.2d at p. 552 ["We issue this opinion to reiterate a bright line rule:  It is structural error requiring automatic reversal to allow a jury to deliberate a criminal charge where there is a complete failure to instruct the jury regarding any of the elements necessary to determine if the prosecution has proven the charge beyond a reasonable doubt."]; *id.* at p. 556 ["a jury's conviction must be set aside where the court omitted instructions on all the elements of an offense"].)  And though two justices dissented in that case, they went out of their way to agree with the majority on the question we decide today.  (See *id.* at p. 561, fn. 5 (dis. opn. of Corrigan, J.).)  The Mississippi Supreme Court has also held on state law grounds that failure to give any definition of a crime is never harmless.  (See *Harrell v. State* (Miss. 2014) 134 So.3d 266, 273.)  And though the North Carolina Supreme Court has held that failure to give two elements of an offense may be harmless (just as we did in *Mil*), that court has not ruled that the same is true for failure to give any definition whatsoever.  (See *State*

6

*v. Bunch* (N.C. 2010) 689 S.E.2d 866.) In the 18 years since *Neder,* we are the first state high court to hold that a trial judge's total failure to define a crime can be harmless. No federal court of appeals has so held either.

The majority points to another aspect of the record that it says confirms Merritt's guilt, aside from the video footage and other evidence: defense counsel's references to the elements of robbery, followed by his argument that "these people were robbed, okay." (Maj. opn., *ante*, at p. 4, 13.) There are at least three problems with using a lawyer's arguments to find guilt in this way. First, "the arguments of counsel are no substitute for instructions from the court." (*People v. Harris* (2008) 43 Cal.4th 1269, 1320.) We have so held for a reason — only a judge can tell jurors an authoritative account of the law, and the integrity of the process is at risk if core obligations of a neutral adjudicator are turned over to advocates bound to the interests of their client. Second, counsel's arguments here were not a "concession." (Maj. opn., *ante*, at pp. 2, 14.) Though the plurality in *Connecticut v. Johnson* (1983) 460 U.S. 73 (*Johnson*) stated that an instructional error "may be harmless if the defendant conceded" the element, the two cases that the opinion cited for this point involved pleas of insanity or self-defense. (*Id.* at p. 87.) When defendants plead either of those defenses, they are *confessing* illegal acts, based on their own knowledge of their own acts. The only way to accept an insanity or self-defense plea is to accept that the defendant committed the charged acts. Merritt did not admit to any acts. Rather, his lawyer simply shared his secondhand assessment of the evidence. And all the lawyer said was that this evidence seemed to show someone else committing a robbery.

The majority quotes *People v. Flood* (1998) 18 Cal.4th 470 (*Flood*), which also stated that "removing an element of the crime from the jury's consideration" can be harmless "where the defendant concedes or admits the element." (*Id.* at p. 504.) A close reading of *Flood* undermines the majority's view. For one, the

7

opinion warned that "failing to submit the entire case to the jury" is "an error that clearly would be a 'structural' rather than a 'trial' error." (*Id.* at p. 503.) The majority seems to hold the opposite. Moreover, the defense lawyer in the *Flood* case *asked* the judge to direct a finding on the element at issue. (*Id.* at p. 492.) The defendant then claimed on appeal that this directed finding violated his right to jury trial. Asking the judge to direct a finding on an element is no doubt a concession of that element. In a case like that, we can safely say that the "defendant himself has taken the issue . . . away from the jury." (*Johnson*, *supra*, 460 U.S. at p. 87.) But Merritt did not ask for any directed finding. Nor did he confess to the charged acts, as with a self-defense or insanity defense.

The third problem with putting so much stock in defense counsel's so-called "concession" is even more fundamental. Merritt, the majority observes, "knew what the elements of robbery were, and he had an opportunity to present any evidence he wished on the subject." (Maj. opn., *ante*, at p. 14.) But the burden of proof in a criminal trial lies solely with the People. (See *Sullivan*, *supra*, 508 U.S. at p. 277; *Flood*, *supra*, 18 Cal.4th at p. 481.) Merritt elected to join the small fraction of criminal defendants who invoke their right to a jury trial, rather than waiving that right for a plea deal. Defendants who invoke their right to a jury trial can be acquitted (including by a directed verdict) even if they present no evidence whatsoever. (See *Johnson*, *supra*, 460 U.S. at p. 87, fn.16 ["a defendant in a criminal trial is justified, of course, in defending solely in reliance on the presumption of his innocence and the State's burden of proof"].) When Merritt chose to go to trial, what he invoked was his right to a jury finding every element of the charged crime, not just the elements his lawyer chose to contest. (See *Estelle v. McGuire* (1991) 502 U.S. 62, 69 ["the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense"].) Defense counsel's argument

8

that *someone* committed a robbery was not a "concession" about the definition of robbery.

The majority writes that "[t]he error here vitiated some of the jury's findings, but not all of them," since jurors concluded that Merritt (rather than someone else) was a perpetrator of some act or another. (Maj. opn., *ante*, at p. 12.) But the question remains: a perpetrator of what, precisely? In every single trial that results in a guilty verdict, the jury will have found that the defendant committed some act or another. (See *People v. Hogue* (1991) 228 Cal.App.3d 1500, 1505.) What the majority calls a "crucial[]" distinction — that the jury determined "defendant's identity as the perpetrator" (maj. opn., *ante*, at p. 12) — will be true for every single case in which this issue will need to be analyzed. But what the Sixth Amendment requires jurors to decide beyond a reasonable doubt is whether the accused committed the charged crime, not whether he or she happened to commit some act. The majority suggests that a finding that the defendant committed an undefined act — a finding that every single jury will make if they convict — is enough to open the door to judges analyzing the evidence in order to decide whether the defendant committed a crime. As a result, no matter how badly the jury was misled, an appellate court will now be able to use the majority's justification for reweighing the evidence. Even if the beginning and end of the judge's instruction to the jury is "decide beyond a reasonable doubt if the defendant is guilty of something, anything," our ruling today requires judges to uphold the conviction if they agree that a video conclusively established guilt.

It is true enough that reversing a conviction can be costly. But the Constitution makes jury trials a fundamental requirement precisely so that the government may not administer trials based on intuition about "whether or to what degree trial by jury impairs the efficiency or fairness of criminal justice." (*Blakely v. Washington* (2004) 542 U.S. 296, 313, 124.) We should be wary of

9

undermining a fundamental right based on discomfort with the cost of the remedy. There is a more balanced way to account for this discomfort: harmless error analysis that is proportionate to the error. Our court has in the past limited harmless error analysis to whether a jury's actual findings "necessarily established the factual predicate" for the uncharged findings. (*People v. Marshall* (1996) 13 Cal.4th 799, 852.) Justice Stevens's *Neder* concurrence applied this narrow version of harmless error analysis. (See *Neder*, *supra*, 527 U.S. at p. 27 (conc. opn. of Stevens, J.).) So did Justice Scalia's dissent, which two other justices joined. (*See id.* at pp. 35–36 (dis. opn of Scalia, J.).) So it is hardly surprising that justices of this court have also recognized this same "narrow basis for finding [an] error harmless." (*Flood*, *supra*, 18 Cal.4th at p. 521 (conc. opn. of Chin, J.); see *ibid.* ["This jury could not possibly find what it *actually did find* without also finding the unchallenged missing element."].)

Along those lines, harmless error analysis in cases like this could be limited to an examination of the jury findings that were not tainted by the error. The question would be whether the jury's findings logically establish the missing elements, not whether videos and live testimony allow an appellate court to guess that the jury could have found those elements. This limited and proportional form of harmless error analysis would ensure that truly harmless errors do not require retrial, while maintaining respect for a fundamental right. If whether or not an error is structural pivots on the fact that the jury made certain valid findings (and this is how the majority treats the jury's findings on identity and intent), it seems disproportionate for this very narrow fact to trigger a roving journey through the prosecution's evidence that ends in judges watching video footage and voting to decide guilt. If this narrow fact is the reason to analyze whether the error was harmless, the remedial analysis should be limited to that one fact alone.

Nothing in the majority opinion limits the nature of the harmless error analysis in light of the severity or character of the error. To the contrary, the majority rules that judges can weigh the evidence on their own even where jurors convict the defendant of a completely undefined crime. The majority takes care to "express no opinion on what other circumstances in other cases might or might not permit a finding of harmless error" as well as to "stress that this kind of error should never occur." (Maj. opn., *ante*, at p. 15.) While I expect those warnings will serve to chasten both trial and appellate judges applying today's opinion, the majority opens a dangerous door by holding — in defiance of both our precedent and the precedent of any other state high court or federal appeals court — that errors of this kind are negligible once enough appellate judges are convinced that the evidence shows a crime.

The expansive scope of the majority's harmless error inquiry may make the result in today's case easier to accept, but the takeaway for future cases is troubling. Going forward, so long as a jury finds beyond a reasonable doubt that the defendant did *something* (even if that something is not a crime), appellate judges can take it from there and decide guilt on their own, no matter what delusions about the law served as the foundation for the jury's verdict. This prospect is especially troubling for cases like this one featuring video evidence, which can have the effect of making a defendant's guilt seem especially open and shut. After today's ruling, so long as video from an officer's body camera or an interrogation looks clear enough, it will not matter if a judge directed the jury to find guilt beyond a reasonable doubt. Even in such extreme cases, today's opinion requires appellate judges to step into the jury's shoes and vote on whether the video proved a crime.

No matter how fair California's judges are, we remain "officers of the Government." (*Neder*, *supra*, 527 U.S. at p. 32 (dis. opn. of Scalia, J.).) Which

means we are "proper objects of that healthy suspicion of the power of government which possessed the Framers and is embodied in the Constitution." (*Ibid.*)  When we let judges examine evidence in order to answer questions that no juror was asked, we are "operating upon the spinal column of American democracy."  (*Id.* at p. 30.)  At least *Neder*'s surgery was restricted to circumstances where a jury was told a definition of the crime.  In those cases, the trial's democratic backbone remains intact, since jurors still heard part of the legislature's definition, and "the error affected only a tiny part of the verdict." (*Flood*, *supra*, 18 Cal.4th at p. 521 (conc. opn. of Chin, J.).)  This democratic backbone is what makes those verdicts salvageable, despite the small imperfection.  But the majority holds that the very principles that purport to assure accountability in any criminal proceeding — the clear recitation of a crime's statutory definition and the requirement that this definition be proved to a factfinder beyond a reasonable doubt — can be cast aside like a ballpoint pen bereft of ink.

No judge ever told the jurors in this case the definition of the charged crime — a definition specified by their democratic representatives.  The majority's holding goes well beyond what *Neder* requires, and it overrules *Cummings'*s crucial safeguards protecting the integrity of a process that decides whether someone is innocent or a criminal.  I respectfully dissent.

**CUÉLLAR, J.**

12

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Merritt

_____

**Unpublished Opinion** XXX NP opn. filed 11/20/15, 4th Dist., Div. 2
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S231644
**Date Filed:** March 20, 2017

_____

**Court:** Superior
**County:** San Bernardino
**Judge:** Debra Harris

_____

**Counsel:**

John L. Dodd, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Acting Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Steven T. Oetting, Meredith White and Christen Somerville, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John L. Dodd
John L. Dodd & Associates
17621 Irvine Boulevard, Suite 200
Tustin, CA  92780
(714) 731-5572

Christen Somerville
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA  92101
(619) 738-9063