Filed 6/28/23  P. v. Keosengthong CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D080818 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD288926) |
| ANDREW KEOSENGTHONG, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Defendant Andrew Keosengthong appeals after a jury convicted him of robbery. (Pen. Code, § 211.[1]) He then admitted the truth of allegations that he had two prior serious or violent felony convictions. The trial court imposed, inter alia, a sentence of 25 years to life pursuant to the Three Strikes law. (§§ 667, subds. (b)-(i), 1170.12, 668.)

His appointed counsel filed a brief pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*) and *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), which raised no arguable issues but asked us to independently review the record for reversible error. We granted Keosengthong an opportunity to file a supplemental brief on his own behalf, but he did not do so. After independently reviewing the entire record (*People v. Kelly* (2006) 40 Cal.4th 106, 119), we find no arguable appellate issues and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2020, Borie Ann Ma was working as a "banker" at an illegal gambling den in San Diego. At the start of her shift, she was given $1,000 in cash to pay winning customers and keys to access the gambling machines and remove cash from them. The gambling den's video surveillance camera recorded the events that occurred that day.

Keosengthong and two other men, known to Ma as "Little Brownie" and "Drago," entered the gambling den together. She did not know

---

[1] All statutory references are to the Penal Code unless otherwise specified.

2

Keosengthong. After a while, the three men approached Ma. Drago said, "[T]hey owe him money." Keosengthong told Ma to give him the "bank roll quietly and no one will get hurt." Ma saw Keosengthong's right hand holding a black object in his right pants pocket, which object she believed could have been the handle of a gun.

Ma gave the men the money she had in her purse. Complying with their request, she also opened up the gambling machines, removed cash from them, and gave it to the three men. At one point, Keosengthong "snatched" the money that she was holding from her hand. In total, the men took about $900 to $1,000 in cash from her.

After the men left, Ma called the gambling den's owner to inform her of the incident. Shortly thereafter, the owner's husband or boyfriend arrived at the gambling den. Ma apparently told him that the men were "strapped," which she understood to mean they had a gun.

About one month later, San Diego Police Department Detective Chris Tews interviewed Ma during his investigation of the incident. He made an audio recording of the interview. Ma told him that Keosengthong held a gun at his right side. During the incident, she saw the handle of the gun and was afraid she was going to be shot. She told Tews that she was scared and shaking during the incident. She opened the gambling machines and gave the three men the money from the machines because she was afraid that she was going to get hurt.

An amended complaint, which was later stipulated to be deemed the information, charged Keosengthong and the other two men with one count of robbery in violation of section 211. It also alleged that Keosengthong: (1) was ineligible for probation under section 1203, subdivision (e)(4); (2) had a

3

serious felony prior conviction within the meaning of sections 667, subdivision (a)(1), 668, and 1192.7, subdivision (c); and (3) had two prior serious or violent felony convictions or juvenile adjudications within the meaning of sections 667, subdivisions (b) through (i), 1170.12, and 668.

At trial, Ma and Tews testified and the trial court admitted into evidence the video recording of the incident, photographs from the recording, and the audio recording of Tews's interview of Ma. In particular, Ma testified that she was smoking methamphetamine during the incident and that it makes her paranoid. She admitted that she had been granted immunity for her drug use and conduct at the gambling den so that she could testify fully about the incident. She described the people and events shown on the video recording (which was played in full for the jury) and in the photographs. She testified that she was scared Keosengthong would hurt her if she did not do what the three men told her to do. She gave the men the money in her purse and from the gambling machines because she was afraid. On cross-examination, Ma testified that she never saw an entire gun, but saw only a black object in Keosengthong's pocket that looked like the handle of a gun. Nevertheless, the black object in his pocket caused her to be scared. Afterward, she did not report the incident to police.

Tews testified that during his interview with Ma, she told him that Keosengthong held a gun at his right side and his left hand reached for the money she held in her hand. In a photograph from the video recording, Tews identified the trigger guard of a gun shown in Keosengthong's right pocket. He also testified regarding certain text messages found on Keosengthong's phone after the incident (e.g., he still owed his "connect [i.e., drug dealer or someone to whom he owed money] five bills" and "[t]hat's why we did what

4

we did really, to pay bills" and "I'm take the pistol with me, cuz . . . just in case").

After hearing closing arguments of counsel and the trial court's instructions, the jury found Keosengthong guilty of robbery. During the bifurcated portion of the trial regarding the related allegations, Keosengthong admitted the truth of the allegations and, on that basis, the court found them to be true. Keosengthong's motion for new trial, on grounds of insufficient evidence, was denied.

A probation report recommended that Keosengthong be sentenced to prison for 30 years to life. Keosengthong filed a *Romero*[2] request that the court exercise its discretion pursuant to section 1385, subdivision (a), to dismiss one of the two prior serious or violent felony conviction allegations (§§ 667, subds. (b)-(i), 1170.12, 668); defense counsel also submitted a statement in mitigation. A confidential psychological evaluation of Keosengthong was also prepared and submitted to the court.

At the July 22, 2022 sentencing hearing, the court first denied Keosengthong's *Romero* motion. It then refused to order probation and imposed a sentence of 25 years to life on the robbery conviction pursuant to the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, 668) and a consecutive five-year term for the serious felony prior conviction allegation (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), but then struck that five-year term pursuant to section 1385. It granted Keosengthong a total of 618 days of credit toward his sentence. The court also imposed the following fines and fees: (1) a $10,000 restitution fine pursuant to section 1202.4, subdivision (b); (2) a $10,000 parole revocation fine pursuant to section 1202.45, suspended unless

---

[2]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

parole is revoked; (3) a $40 court operations assessment (§ 1465.8); (4) a $30 criminal conviction assessment (Gov. Code, § 70373); (5) a $41 theft fine (§ 1202.5); and (6) victim restitution to Ma (§ 1202.4, subd. (f)), in an amount to be determined later.[3]

## DISCUSSION

Appointed counsel filed a brief summarizing the factual record and proceedings in the trial court. He presents no argument for reversal, but asks us to independently review the entire record for reversible error in accordance with *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738. In his brief, counsel identified the following issues that might arguably support the appeal: (1) whether there is sufficient evidence to support Keosengthong's conviction of robbery; and (2) whether the trial court abused its discretion by denying his request to dismiss one of the two prior serious or violent felony conviction allegations.

Our review of the entire record pursuant to *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738, including the issues identified by appellate counsel, has disclosed no reasonably arguable appellate issue. We briefly discuss the two possible issues identified by counsel.

Regarding the sufficiency of the evidence, we conclude that there is more than substantial evidence to support the robbery conviction. Section

[3] Keosengthong did not argue, much less request a hearing on, any purported inability to pay those fines and fees. Also at the July 22, 2022 hearing, pursuant to a stipulation between the People and Keosengthong, the trial court sentenced him in a separate criminal case (San Diego County Superior Court case No. SCD287930) to a term of 32 months for his conviction for possession of an assault weapon (§ 30605, subd. (a)), to run consecutive to the sentence of 25 years to life imposed in this case. Any challenge to the judgment and sentence in that case is not part of this appeal.

6

211 provides that "robbery" is the "felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Based on our review of the record, including the evidence discussed above, we conclude there is substantial evidence to support the jury's findings on the elements of robbery (i.e., that Keosengthong took personal property, namely cash, that was not his own, that the property was in the possession of Ma, that he took it from Ma or her immediate presence, that he took it from Ma against her will, that he used force or fear to take the property from her, and that when he used force or fear to take the property from Ma, he intended to deprive her of it permanently). (See, e.g., CALCRIM No. 1600; *People v. Merritt* (2017) 2 Cal.5th 819, 824; *People v. Jackson* (2016) 1 Cal.5th 269, 343.)

Regarding Keosengthong's *Romero* motion to dismiss one of the two prior serious or violent felony conviction allegations, we conclude that the court did not abuse its discretion under section 1385, subdivision (a) by denying his request. The court could reasonably conclude, as the People argued in opposition below, that Keosengthong's actions during the robbery, his background and long criminal history (i.e., 10 felony convictions or juvenile adjudications over 24 years), and his detention at a California Youth Authority facility, state imprisonment, or post-custody supervision during most of those 24 years, all weighed against granting the motion. At his sentencing, the court noted, in particular, that Keosengthong "has an extensive criminal history with consistent convictions for possession or use of firearms and other weapons, and he has spent extremely limited time out of custody since his 1999 strike conviction. It seems, looking roughly at the years and the parole revocations, that it is perhaps only [two] years out of custody, but certainly less than [five] years total over that 22[-]year period of

7

time." Based on the record, the court reasonably concluded that Keosengthong "falls squarely within the spirit of the [T]hree [S]trikes [L]aw." (See, e.g., *People v. Carmony* (2004) 33 Cal.4th 367, 378; *People v. Anderson* (2019) 42 Cal.App.5th 780, 786.)

In sum, our review of the entire record pursuant to *Wende, supra*, 25 Cal.3d 436 and *Anders, supra*, 386 U.S. 738, including the issues identified by appellate counsel, has disclosed no reasonably arguable appellate issue. Keosengthong has been adequately represented by counsel in this appeal.

## DISPOSITION

The judgment is affirmed.

DATO, J.

WE CONCUR:

O'ROURKE, Acting P. J.

KELETY, J.