SLOUGH, J.
*949 In late 2012, the police searched a residence where Bobbie Johnnie McCloud happened to rent a room. The officers were initially there to *950 perform a probation search of someone else, but ended up arresting McCloud when they found crack cocaine and a loaded gun inside his bedroom. In early 2013, after McCloud had been released from custody on bail for charges related to that incident, police once again found him in possession of crack cocaine.
The prosecution charged McCloud with felony possession for sale for the 2012 incident, along with three felonies based on firearm possession. For the 2013 incident, the prosecution charged him with felony transportation for sale ( Health & Saf. Code, § 11352, subd. (a) ), misdemeanor possession of a stun gun by a felon, and misdemeanor resisting an officer. The jury convicted McCloud of all the charges except the three firearm-related felonies. In a subsequent bench trial, the court found McCloud had a prison prior, a prior strike conviction for robbery, and three prior super strike convictions for assaulting an officer with a machine gun, and it sentenced him to a total of 28 years 8 months to life.[1]
McCloud raises three arguments on appeal. He contends we must reverse his transportation for sale conviction because the trial court failed to instruct the jury that "transportation" means for the purpose of sale following the 2014 amendment to Health and Safety Code section 11352. The People agree the instruction was erroneous but argue the error was harmless because the evidence of intent to sell was overwhelming. Next, he argues we must also reverse the possession for sale conviction because the evidence supporting the charge was the fruit of an unlawful warrantless search. Finally, he argues the trial court abused its discretion by allowing the prosecution to amend the super strike allegations to correct a clerical error after the jury had been discharged.
*306 We conclude McCloud's second and third arguments lack merit, but his first does not. In the published portion of this opinion, we conclude the jury instructions for transportation for sale omitted an essential element of the offense and the evidence supporting the missing element was not overwhelming. We therefore reverse that conviction, but affirm the judgment in all other respects.
*951 I
FACTUAL BACKGROUND
A. The 2012 Incident
In September 2012, a Riverside County gang task force arrived at probationer R.F.'s residence to perform a probation search. McCloud was standing in the driveway of the home but ran inside and turned off the porch light when he saw the patrol cars approaching. Upon entering the home, the officers encountered four men playing dominoes in the kitchen. One of the officers recognized R.F. and another man he knew to be a gang member, but McCloud did not appear to be among the group.
At this point, the officers began a protective sweep of the house, ordering everyone to come out of the rooms. McCloud's cousin, Antonio, came out of McCloud's bedroom. McCloud was in the bathroom and remained there for about thirty seconds and a few more commands before flushing the toilet and emerging. The officers swept through McCloud's room to see if anyone else was inside, and in so doing saw what appeared to be crack cocaine and drug paraphernalia in plain view on a table.
The officers requested and obtained McCloud's consent to more thoroughly search his room. In total, they found 0.9 grams of crack cocaine; a digital scale; a ceramic plate; pills; a Ziploc bag containing about 100 smaller plastic bags; a marijuana grinder and pipe; an operable .22 revolver loaded with six live rounds of ammunition under the mattress; and over $750 in cash, in denominations of $20 or less, stashed in various places near the cocaine. Half of the cocaine lay on the ceramic plate and the other half was packaged inside two plastic baggies. There was cocaine dust on the scale and on a razor blade sitting on the plate.
A cell phone lying in the hallway just outside McCloud's room contained text messages addressed to him. One of the messages was from earlier that day and said, "Can you bring a dime, please?" McCloud had responded, "No. Don't have any."
At trial, a deputy who was part of the search team testified as the prosecution's drug expert. He believed McCloud intended to sell the cocaine found in his bedroom. He based his opinion on the fact McCloud did not appear to be under the influence during the search and was not in possession of a pipe or other device for ingesting the cocaine. McCloud was, on the other hand, in possession of several indicia of sale. The ceramic plate and razor blade would be used to cut the rocks into sellable, smaller amounts that *952 would fit inside a pipe; the scale would ensure the accuracy of those amounts; and the small baggies would be for individual packaging. The expert estimated the cocaine found in McCloud's bedroom was worth about $40 total-there was $20 worth on the plate and $10 worth inside each of the two plastic bags. He explained dealers do not typically keep large amounts of cash on them, but do tend to accumulate money until they have enough to buy more supply. That McCloud had a large amount of cash and a relatively small amount of cocaine indicated he may have been getting ready to resupply. The messages in McCloud's *307 cell phone also indicated he intended to sell the cocaine, as a "dime" refers to $10 worth of a substance and the police found two baggies with $10 worth of cocaine in his room.
The expert also said when he searched the bathroom, he noticed the plunger was wet, indicating it had been recently used. In his experience serving search warrants on suspected drug dealers, they often will try to flush drugs down the toilet as soon as the police arrive. He believed this may have been why McCloud was in the bathroom flushing the toilet when the officers began the sweep.
B. The 2013 Incident
In February 2013, while out on bail for the charges stemming from the 2012 search, McCloud initially resisted a pat down search during which officers found a pill bottle containing marijuana in his pocket. On the passenger seat of the car he had been driving, the officers found a pill bottle containing 1.4 grams of crack cocaine, a stun gun, $45 in cash, and two cell phones.[2]
According to the prosecution's drug expert, the circumstantial evidence of intent was not as strong as it was in the 2012 incident, and he could not be sure whether McCloud planned to sell or use the cocaine the officers found in his car. In response to the prosecutor's question whether McCloud possessed the 1.4 grams of cocaine "for purposes of sale," the expert answered, "It could be and it could not be." He explained: "[N]ormally ... to prove that it's for sales we want to see things like packaging ... We want to see a pay-owe sheet. Someone could conceivably possess [1.4 grams] of cocaine for their personal use." The expert said if it had been his case, he would have investigated McCloud's cell phone to see if it contained call logs indicative of dealing. As for the cash McCloud was carrying, the expert viewed $45 as a neutral amount, noting, "He's got money. Everybody has money, but it's hard to say one way or the other on that."
*953 When the prosecution asked the expert how the absence of a crack pipe and the presence of a stun gun and two cell phones factored into his analysis, he responded those facts made him "lean[ ] more towards sales." He explained that drug dealers often carry weapons to defend themselves and their product because "you're dealing in a business you can't call the police if something happens." He also noted 1.4 grams was "quite a bit for a user to possess for a casual or regular user."
On cross-examination, defense counsel attempted to elicit a more definite opinion on McCloud's intent. The following exchange occurred:
"Q. Deputy Williams, he could have been possessing it for sales, or he could not have been possessing it for sales, really is what you testified to?
A. Yes, sir.
Q. So he might have been selling drugs, or he might have ... possessed those for personal use, you just don't know?
A. Without more facts, no, sir, I couldn't really say positively one way or the other.
Q. Okay. So he might have been, you just don't know?
A. That's correct."
On redirect, the prosecutor asked whether the expert's conclusion changed if he considered the contraband found in McCloud's bedroom during the 2012 search. The expert responded, "Based *308 upon what I knew when I was at his house, absolutely I would say he's back in business. That he's selling." On recross, defense counsel asked the expert to confirm his opinion was that McCloud "might have possessed it for sales, might have possessed it for personal use," and the expert replied, "[b]ased upon the facts of this case alone, yes, sir."
C. Defense Evidence
McCloud's cousin Antonio had been arrested on the evening of the 2012 search and pled guilty to possession of a controlled substance while armed with a firearm. At McCloud's trial, Antonio said he used to sell drugs to make ends meet. He said on the day of the 2012 search he had sold McCloud three rocks of cocaine for $50. McCloud did not sell drugs-he had a job working as a "sign twirler"-but he had a drug problem and smoked crack at least once a day. McCloud would smoke "primos," a modified type of "blunt"
*954 made by cutting open a cigar with a razor blade and replacing the tobacco with marijuana and cocaine. Antonio did not like when McCloud got high and he did not like selling him drugs, but he felt it was necessary to avoid becoming homeless. Antonio also said the gun under McCloud's mattress belonged to him.
D. The Verdict
The jury found McCloud guilty of possession for sale ( Health & Saf. Code, § 11351 ), transportation for sale ( Health & Saf. Code, § 11352, subd. (a) ), misdemeanor being a felon in possession of a stun gun, and misdemeanor resisting an officer. It found him not guilty of possessing cocaine while armed with a loaded, operable firearm ( Health & Saf. Code, § 11370.1 ), being a felon and narcotic addict in possession of a firearm ( Pen. Code, § 29800 ), and being a felon in possession of ammunition ( Pen. Code, § 30305 ).
II
DISCUSSION
A. Transportation for Sale Instruction
The parties correctly agree the trial court failed to instruct the jury with an essential element of transportation for sale ( Health & Saf. Code, § 11352 )-that when McCloud transported the cocaine he intended to sell it. Their disagreement concerns only whether the instructional error was prejudicial. McCloud contends it was because the prosecution's circumstantial evidence of intent to sell was not strong and the entire defense theory was based on evidence McCloud was an addict, not a dealer. The People contend the error was harmless because there was overwhelming evidence of an intent to sell. We agree with McCloud. In our view, the circumstantial evidence of McCloud's intent was conflicting, and not particularly strong one way or the other. As a result, we cannot say with confidence the jury would have found him guilty of the offense had it been properly instructed transportation means not just movement from one place to another, but movement for the purpose of sale.
1. Additional factual background
The prosecution charged McCloud with the offense in February 2013. At the time, a defendant could be guilty of violating Health and Safety Code section 11352 if he or she simply transported the proscribed substances. ( Health & Saf. Code, § 11352, former subd. (a); Stats. 2011, ch. 15, § 154.) As we explained in *955 People v. Lua (2017) 10 Cal.App.5th 1004, 1012, 217 Cal.Rptr.3d 23 ( Lua ): "Prior to January 1, 2014, section 11379 provided that any person who 'transports' specified controlled substances, including methamphetamine, *309 shall be punished by imprisonment. (§ 11379, former subd. (a); Stats. 2011, ch. 15, § 174.) The courts had interpreted the word 'transports' to include transporting controlled substances for personal use. [Citations.] The statute provided enhanced penalties for a person who 'transports for sale,' as opposed to for some other purpose, but a defendant could be convicted of the offense without proof of intent to sell. (§ 11379, former subd. (b); Stats. 2011, ch. 15, § 174.)"
Effective January 2014, the Legislature amended the statute by adding a new subdivision that states, "[f]or purposes of this section, 'transports' means to transport for sale." ( Health & Saf. Code, § 11379, subd. (c) ; Stats. 2013, ch. 504, § 2.) In August 2014, the CALCRIM authors amended CALCRIM No. 2300 to reflect the 2014 statutory amendment by inserting the words "for sale" after the word "transported": "To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant (... transported for sale ...) a controlled substance." ( CALCRIM No. 2300 [August 2014 update], italics added; see also Lua , supra , 10 Cal.App.5th at p. 1012, 217 Cal.Rptr.3d 23 [discussing the CALCRIM update].) The authors also added the words "for sale" to the instruction's definition of the term "transports": "A person transports something if he or she carries or moves it from one location to another for sale , even if the distance is short." ( CALCRIM No. 2300, second italics added.)
McCloud's trial began in November 2015. For the transportation for sale charge, the trial court instructed the jury with a pre-amendment version of CALCRIM No. 2300 that did not contain the "for sale" additions:
"The defendant is charged ... with selling/furnishing/administering/giving away/transporting/importing cocaine base, a controlled substance in violation of [ Health & Safety Code section] 11352.
"To prove that the defendant is guilty of this crime, the People must prove that:
"1. The defendant transported a controlled substance;
"2. The defendant knew of its presence;
"3. The defendant knew of the substance's nature or character as a controlled substance;
"4. The controlled substance was cocaine base;
*956 "AND
"5. The controlled substance was in a usable amount. [¶] ... [¶]
"A person transports something if he or she carries or moves it from one location to another, even if the distance is short."
During closing argument, the prosecutor argued McCloud was guilty of the offense because he "transported for sale a controlled substance, [1.4 grams] of crack cocaine." As to the transportation element, the prosecutor said, "[A] person transports something if he carries or moves it from one location to another, even if the distance is short. So somebody might be thinking transportation. Okay. That means he had to transport it from Mexico to California. No. Any short distance whatsoever is sufficient. Any movement. [¶] ... [¶] So the fact that [McCloud] was in the vehicle driving with that on the passenger seat constitutes transportation."
Defense counsel argued McCloud was a drug addict who intended to use, not sell, the cocaine the police found in his car. He pointed out the lack of packaging and paraphernalia indicative of sales and the fact the drug expert could not even be sure of McCloud's intent: "[The drug expert] himself testified that based on the fact that there were no baggies, there were no scales, there were no pay-owe sheets, *310 there isn't an excessive amount of cash. ... His testimony was that might have been, might have been for sales, or it might have been for personal use."
2. Analysis
Health and Safety Code section 11352 as amended at the time of McCloud's trial provided transportation was a crime only if the prosecution established beyond a reasonable doubt the transportation was for sale . The jury instruction did not include the new "for sale" element, and as a result it was erroneous. ( People v. Mil (2012) 53 Cal.4th 400, 409, 135 Cal.Rptr.3d 339, 266 P.3d 1030 ( Mil ) [it is error to omit from instructions an essential element of an offense and defendant need not object to preserve the claim for appeal].) As noted, the parties agree on this point. The issue is whether the instructional error was harmless.
Omission of an element of an offense is not reversible per se but rather is subject to the harmless-beyond-a-reasonable-doubt standard articulated in Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. ( Neder v. United States (1999) 527 U.S. 1, 4, 119 S.Ct. 1827, 144 L.Ed.2d 35 ( Neder ); People v. Merritt (2017) 2 Cal.5th 819, 826, 216 Cal.Rptr.3d 265, 392 P.3d 421, cert. filed May 22, 2017 ( Merritt ).) In cases of omitted *957 elements, our high court has cautioned the error "will be deemed harmless only in unusual circumstances , such as where each element was undisputed, the defense was not prevented from contesting any [or all] of the omitted elements, and overwhelming evidence supports the omitted element." ( Merritt , at p. 828, 216 Cal.Rptr.3d 265, 392 P.3d 421, italics added.)
"Our task, then, is to determine 'whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' " ( Mil , supra , 53 Cal.4th at p. 417, 135 Cal.Rptr.3d 339, 266 P.3d 1030.) In Neder , the United States Supreme Court instructed appellate courts to "conduct a thorough examination of the record" and "[i]f, at the end of that examination, the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error-for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding -it should not find the error harmless." ( Neder , supra , 527 U.S. at p. 19, 119 S.Ct. 1827, italics added.) As our high court has explained, review for overwhelming evidence is essentially the reverse of a review for substantial evidence to support a conviction: "[U]nder [a substantial evidence review] ... we would view the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of any facts the jury might reasonably infer from the evidence," however, "our task in analyzing the prejudice from the instructional error is whether any rational fact finder could have come to the opposite conclusion." ( Mil , at p. 418, 135 Cal.Rptr.3d 339, 266 P.3d 1030.) Applying this standard here, we must find the error prejudicial if the record contains evidence to support a finding McCloud intended to use, rather than sell, the cocaine.
Having reviewed the record, we conclude it contains such evidence. First of all, and as the prosecution's drug expert pointed out, McCloud was in possession of none of the typical indicia of sales. The cocaine was in a single container (the pill bottle)-McCloud had no baggies or other packaging, no scale, no pay-owe records, and we do not know whether his phone contained any evidence of sales. Additionally, McCloud's cousin testified McCloud was a drug addict who smoked crack on a daily basis, and that his preferred method of *311 ingestion was smoking repurposed cigars filled with marijuana and cocaine, or "primos." That McCloud was found carrying not just the cocaine but also marijuana supports an inference he planned to combine both drugs into a primo. This evidence, coupled with the expert's inability to definitively conclude McCloud intended to sell the cocaine, reasonably supports a finding he did not intend to sell the cocaine but rather would have smoked it to support his addiction.
Two recent California Supreme Court cases inform our analysis. In Merritt , the Court found the trial court's failure to instruct the jury with any of the *958 elements of the charged robbery offenses harmless due to the strength of the evidence and the defense theory of the case. ( Merritt , supra , 2 Cal.5th at pp. 831-833, 216 Cal.Rptr.3d 265, 392 P.3d 421.) The defendant had been charged with robbing two different clerks on two different occasions, and both crimes had been caught on the surveillance cameras. ( Id. at pp. 822-824, 216 Cal.Rptr.3d 265, 392 P.3d 421.) At trial, the defense conceded there was "no question [the victims] were robbed," but argued the defendant had been wrongly identified as the perpetrator from the surveillance videos. ( Id. at p. 824, 216 Cal.Rptr.3d 265, 392 P.3d 421 ) Based on this concession and the fact the crimes were recorded, the Court concluded it was impossible the jury would have acquitted the defendant of robbery if they had been instructed on the elements of that offense. The only real issue at trial was identity-there was no dispute the crimes that had been committed satisfied the elements of robbery. Having decided the identity issue against the defendant, it was a foregone conclusion the jury would find the elements of robbery had been satisfied. ( Id. at pp. 831-833, 216 Cal.Rptr.3d 265, 392 P.3d 421.)
The prejudice analysis came out differently in Mil . There, the defendant was convicted of first degree murder with robbery-murder and burglary-murder special circumstances under an aiding and abetting theory of liability. ( Mil , supra , 53 Cal.4th at p. 405, 135 Cal.Rptr.3d 339, 266 P.3d 1030.) The Court held the trial court erred by failing to instruct on two elements: (1) the defendant was a "major participant" in the burglary and robbery and (2) had acted with reckless indifference to human life. ( Id. at pp. 408-409, 135 Cal.Rptr.3d 339, 266 P.3d 1030.) At trial, defendant contested whether he acted with reckless indifference to human life, and that issue became the focus on appeal. The appellate court concluded the failure to instruct on reckless indifference was harmless, citing all of the evidence supporting an inference the defendant was subjectively aware of a grave risk of death when he participated in the burglary and robbery. ( Id. at pp. 417-418, 135 Cal.Rptr.3d 339, 266 P.3d 1030.) The prosecution had presented evidence the defendant knew his associate, the direct perpetrator of the murder, liked to carry " 'big old steak knives with her,' " as well as evidence he himself had violently attacked the victim during the burglary-robbery. ( Id. at p. 418, 135 Cal.Rptr.3d 339, 266 P.3d 1030.)
The Supreme Court concluded the appellate court had used the "less demanding" substantial evidence standard and instead should have looked for evidence to support an inference the defendant was not subjectively aware of the risk of death when he participated in the burglary-robbery. ( Mil , supra , 53 Cal.4th at pp. 417-418, 135 Cal.Rptr.3d 339, 266 P.3d 1030.) Using the more demanding standard, the Supreme Court found the record contained evidence the defendant told the police during an interview that he was unaware his associate had planned to use any physical violence during the burglary and robbery and *312 that he was unaware she had been armed with a knife. ( Id. at pp. 418-419, 135 Cal.Rptr.3d 339, 266 P.3d 1030.) The Court also noted *959 the evidence about the defendant's physical attack on the victim was conflicting. There was some evidence he had engaged in a violent fist attack, but other evidence suggested his blows did no more than leave the victim a little dazed. ( Id. at p. 419, 135 Cal.Rptr.3d 339, 266 P.3d 1030.)
Based on the fact the record contained some evidence to support the defendant's claim he had no subjective knowledge of the risk of death, the Court concluded "a rational juror, given proper instructions, could have had a reasonable doubt whether defendant was subjectively aware of a grave risk of death when he participated in this burglary and robbery." ( Mil , supra , 53 Cal.4th at p. 419, 135 Cal.Rptr.3d 339, 266 P.3d 1030.) "It follows," the Court explained, "omission of the element concerning defendant's state of mind was prejudicial and requires reversal of the burglary-murder and robbery-murder special circumstances." ( Ibid . )
Reviewing the trial record under the overwhelming evidence standard articulated in Mil , we find our case to be more like Mil than Merritt . Unlike Merritt , the evidence supporting the omitted element (intent to sell) was not overwhelming, the event was not recorded, and defense counsel did not stipulate the evidence satisfied the omitted element. Rather, the prosecution and the defense adduced conflicting evidence on the issue, as was the case in Mil .
The People argue the evidence of intent to sell was overwhelming because the expert opined McCloud intended to sell the cocaine and because McCloud had more cocaine on him that evening than he did in 2012. We see two problems with this argument. First of all, the 2012 and 2013 incidents are distinct, and it would be improper for the jury to assume an intent to sell for the transportation charge based on the strength of the evidence supporting the possession charge. Second, the People overstate the expert's opinion on McCloud's intent. The difference between 0.9 (the amount McCloud possessed in 2012) and 1.4 grams (the amount he had in 2013) is relatively minor, and the expert himself said a person "could conceivably possess ... [1.4 grams] of cocaine for their personal use." Contrary to the People's characterization, we find the expert was ultimately unable to commit to the sales theory. He began his testimony by stating he could not be sure about intent because McCloud did not possess the typical indicia of sale, and the closest he came to expressing a definite opinion was to say he was "leaning" towards intent to sell based on the presence of the stun gun and the two cell phones. At multiple points before and after that statement, however, he confirmed he was unsure one way or the other.
We find the expert's refusal to express a firm opinion on intent crucial to our prejudice analysis. If the very person trained to discern the difference *960 between dealers and users expressed doubts about McCloud's intent, it is only reasonable to assume a properly instructed jury would as well. Where even the expert on the omitted element does not view the pertinent evidence as strong, we cannot conclude the evidence is so overwhelming as to compel a conviction despite the omission.
We also cannot conclude the prosecutor's reference to the offense as "transportation for sale" during closing argument rendered the error harmless. In certain circumstances, the "possibility of confusion" occasioned by an instructional error may be "diminished by the parties' closing arguments." ( *313 People v. Hajek and Vo (2014) 58 Cal.4th 1144, 1220, 171 Cal.Rptr.3d 234, 324 P.3d 88, abrogated on other grounds by People v. Rangel (2016) 62 Cal.4th 1192, 200 Cal.Rptr.3d 265, 367 P.3d 649.) Here, however, while the prosecutor called the offense "transportation for sale," her commentary on the transportation element, if anything, compounded the instructional error. She never told the jury the transportation must be for the purpose of sale. Instead, she conveyed the crucial point about transportation was it could be over any distance, no matter how small: "Any short distance whatsoever is sufficient. Any movement. [¶] ... [¶] So the fact that [McCloud] was in the vehicle driving with that on the passenger seat constitutes transportation." Far from correcting the instructional error, this commentary emphasized the pre-amendment version of the statute, where any movement, for any purpose, was sufficient to constitute a violation.
Given the state of the evidence on intent to sell, we hold McCloud was prejudiced by the incomplete instruction and reverse his transportation for sale conviction.
B.-C.**
III
DISPOSITION
We reverse the judgment as to the transportation for sale count, affirm the judgment in all other respects, and remand to the trial court for resentencing.
*961 The People may elect to retry McCloud for transportation for sale at the option of the prosecuting attorney.
We concur:
MILLER, Acting P. J.
CODRINGTON, J.

The court deemed transportation for sale the principal count and imposed an enhanced sentence of 25 years to life as a result of the super strikes (Pen. Code, § 1170.12, subd. (c)(2)(A) ), plus a two-year enhancement for committing the offense while out on bail (Pen. Code, § 12022.1 ). It imposed an eight-month sentence for the possession for sale count, plus a one-year term for the prison prior. The People filed a petition for rehearing requesting we advise the trial court that it had erred in deeming possession for sale a subordinate count requiring a reduced sentence (one-third the middle term). They point out Penal Code section 1170.1's principal/subordinate sentencing formula does not apply to felonies punishable by indeterminate terms, like McCloud's transportation for sale conviction. We decline to address the issue, as our reversal of the indeterminate term conviction renders it moot.

It is unclear from the officers' testimony whether the cell phones were in McCloud's pocket or his car, but the point is not material to our analysis.

See footnote *, ante.