Filed 6/13/22  P. v. Santiago CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>THOMAS SANTIAGO,<br><br>    Defendant and Appellant. | 2d Crim. No. B317240<br>(Super. Ct. No. BF169645)<br>(Kern County) |

Thomas Santiago appeals a judgment following his conviction of second degree murder (Pen. Code, §§ 187, 189)[1] (count 1) and assault likely to produce great bodily injury by an inmate serving a life sentence that results in death (§ 4500) (count 2).  In a bifurcated proceeding, the trial court found the allegation that Santiago suffered a prior conviction for attempted murder was true.  He was sentenced to life without the possibility

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

of parole on count 2 and a 30-years-to-life sentence on count 1 that was stayed until the completion of the sentence on count 2.

We conclude, among other things, that Santiago has not shown that his trial counsel provided ineffective assistance of counsel. We affirm.

FACTS

On February 12, 2016, Santiago was a state prisoner at the California Correctional Institution at Tehachapi. He shared a prison cell with inmate Miguel Alejo. Prison Correctional Officers Christina Holcomb and Edward Knickerbocker were assigned to the floor where that cell was located. The officers heard a "grrr or groan" coming from the cell block. After investigating the location of that sound, Holcomb went to Santiago's cell and saw Santiago "on top of" Alejo. Alejo was on his back, Santiago was on top of him, and they were "belly to belly."

Alejo's feet "were limp." Santiago's movements showed "a form of aggression" and his "muscles were tight." The officers ordered them to stop. Santiago did not respond to that order. Alejo was not moving.

Santiago's body position was "consistent with . . . somebody strangling someone or squeezing some part of [Alejo's] upper body." Santiago did not respond to the officers' orders to get off of Alejo. The officers twice used pepper spray to stop Santiago. Santiago did not respond and did not stop his attack on Alejo. Knickerbocker struck Santiago twice with his baton before Santiago got off of Alejo. A search of Santiago revealed he possessed bindles of methamphetamine.

Alejo was transported to a hospital where he died. An examination of his body showed "signs of trauma to the throat

2

skin due to at least in part a manual strangulation." He had "damage to the pharynx that occurs in classic textbook compression of the throat." The cause of death was due to "neck compressions" and "manual strangulations."

Holcomb testified that she did not see "any injuries" on Santiago. Hollis Bennett, a registered nurse at the prison, testified Santiago had been exposed to pepper spray. Bennett did not observe any injuries on Santiago.

Shaun Robinson, a prisoner who knew Santiago, testified that he heard Santiago tell another prisoner, "I dusted my celly." That meant he killed his cellmate. Santiago said, "I choked him out." He added, "Someone wasn't paying his bills. I got tired of it. That's it."

On another occasion, Santiago said, "I dusted Huero." Huero was the nickname for Alejo. Santiago said he "[c]hoked Huero out." Robinson asked Santiago, "[W]hat happened?" Santiago responded, "He wasn't paying his bills. I got tired of it."

After a trial by jury, Santiago was found not guilty of first degree murder, guilty of second degree murder, and he was convicted of violating section 4500.

*The Pre-Trial Stipulation*

Under the charged offense in count 2 (§ 4500), one fact to be proven at trial is whether the defendant was serving a life sentence at the time he committed an assault in prison. (CALCRIM No. 2720.) At an in limine hearing, Santiago's counsel expressed concern about the jury making a factual finding on the life sentence issue. He preferred to resolve that element by stipulation. He said that "we could remove that from instructing the jury and just make this strictly a homicide case."

3

Santiago's counsel and the prosecutor ultimately entered into a stipulation that was read to the jury. It provided, "[T]he People and the defense stipulate that at the time of the charged incident, the defendant, born on August 15th, 1980, was serving 25 years to life, plus six years, for attempted murder . . . ."

DISCUSSION

*Ineffective Assistance of Counsel*

Santiago contends his trial counsel provided ineffective assistance by entering into a stipulation that he (Santiago) was serving a life sentence for attempted murder. He claims counsel failed to take steps "to prevent the jury from learning of the prior conviction of attempted murder."

To establish ineffective assistance of counsel, 1) the attorney's performance must fall below the objective standards of reasonable representation by competent counsel, and 2) counsel's actions must result in the type of prejudice that impacts the outcome of the case and undermines the constitutional reliability of the judgment. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694; *In re Marquez* (1992) 1 Cal.4th 584, 603.) "A reviewing court will indulge in a presumption that counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.) It is the defendant's burden on appeal to show constitutionally ineffective assistance of counsel. (*Ibid.*) If " ' "the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on

4

appeal must be rejected.' " (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.)

Santiago contends by making this stipulation his attorney neglected the duty to prevent the jury from hearing prejudicial information about his prior attempted murder conviction.

There are reasonable justifications for counsel's actions. Santiago highlights his counsel's decision to make the stipulation. But as the People note, the stipulation was related to counsel's larger trial strategy given the nature of the charges. Courts must give "great deference to the tactical decisions of trial counsel." (*In re Marquez*, *supra*, 1 Cal.4th at p. 603.)

Here Santiago was charged with violating section 4500. Section 4500 provides, in relevant part, "Every person *while undergoing a life sentence, who is sentenced to state prison within this state*, and who, with malice aforethought, commits an assault upon the person of another with a deadly weapon or instrument, or by any means of force likely to produce great bodily injury is punishable with death or life imprisonment without possibility of parole." (Italics added.)

For this offense the trial court, using the standard CALCRIM No. 2720 jury instruction, would have to instruct jurors that they had to find that one element of the crime was that the defendant had been "sentenced to both a specific term of years and a maximum term of life in state prison." Santiago's counsel could reasonably be concerned that jurors hearing this might assume that because he was serving a life sentence he had committed murder. The stipulation: 1) removed the possibility that jurors would consider Santiago as a convicted murderer in a murder case, and 2) reduced the possibility of undue juror speculation about what crime he must have committed to receive

5

the "maximum" sentence. The stipulation also revealed unfavorable information. But defense counsel often have to make tactical decisions to reveal such information to "make the best of a bad situation." (*People v. Hinton* (2006) 37 Cal.4th 839, 877; *People v. Freeman* (1994) 8 Cal.4th 450, 498.)

Santiago claims that instead of entering into this stipulation, counsel should have objected to the introduction of this "prior bad acts" evidence "under Evidence Code section 1101, subdivision (a)." That would be a proper objection in most cases. But here the section 4500 offense essentially requires evidence of a prior bad act as an element of the crime as it requires proof the defendant is serving a life sentence. (*People v. Superior Court (Bell)* (2002) 99 Cal.App.4th 1334, 1341.)

Santiago claims his counsel should have let the People introduce evidence to prove the life sentence element and object if it included the prior conviction. But counsel did not want jurors to consider such trial evidence because it would draw their attention away from the charged crimes. As the People note, "Counsel . . . could have reasonably preferred a short, dry stipulation that included appellant's attempted murder conviction over admission of the evidence at trial . . . ."

Santiago suggests: 1) it was easy to separate the life sentence element from the attempted murder conviction so that the sentence would be admitted and the conviction excluded; and 2) counsel was negligent for not attempting to achieve that result. But Santiago has not shown from this record that it was so easy or that counsel failed to make this attempt. At the in limine hearing, counsel tried to obtain a stipulation on the life sentence element alone. But the prosecutor would not agree. She claimed she had to introduce the "969b packet" with the conviction, and

6

the conviction was a necessary part of the proof on the life sentence element. The trial court agreed with the prosecutor. The court said, "[T]he [district attorney is] pretty much in the driver's seat how much they're willing to stipulate on these particular cases." Santiago assumes his counsel had the ability to have the trial court require the prosecutor to stipulate solely to the fact that he was serving a life sentence. But a "trial court cannot compel a prosecutor to accept a stipulation that would deprive the state's case of its evidentiary persuasiveness." (*People v. Rogers* (2013) 57 Cal.4th 296, 329.)

Santiago contends he is "perplexed" by his counsel's trial strategy. But the record reflects that counsel did not decide this strategy alone. At the in limine hearing, counsel represented that he would be acting with Santiago's consent. He said he would agree to a stipulation "if my client is willing to stipulate." Santiago cannot credibly attack the validity of a strategy that he agreed with at trial. (*People v. Hines* (1997) 15 Cal.4th 997, 1040.) The mere fact that counsel could have chosen a different procedural path does not mandate an ineffective assistance finding. (*People v. Jennings* (1991) 53 Cal.3d 334, 379.) Santiago must overcome the presumption that his counsel "made all significant decisions in the exercise of reasonable professional judgment." (*Strickland v. Washington, supra*, 466 U.S. at p. 690.) His current disagreement with the trial strategy does not, by itself, overcome the "heavy measure of deference" we must give "to counsel's judgments." (*Id*. at p. 691.) Counsel's wide latitude to make difficult tactical choices cannot be judged on a 20/20 hindsight standard. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.)

7

But even had Santiago shown his counsel's actions fell below the objective standard of reasonable representation, he still must show counsel's performance was prejudicial to the outcome. (*Strickland v. Washington, supra*, 466 U.S. at pp. 688, 694.) But that is not the case here.

First, the trial court took precautions to make sure jurors would not consider the attempted murder conviction in deciding Santiago's conduct on the charged offenses. The court instructed the jury, "The stipulation regarding the defendant's prior criminal conviction can only be used to establish that he was serving a life sentence on February 12th, 2016, and may not be used for any other purpose." We must presume the jury followed that instruction. (*People v. Gonzales* (2011) 51 Cal.4th 894, 940.)

Second, there was overwhelming evidence of Santiago's guilt. Santiago attacked Alejo in his cell. He was on top of his victim and his body was positioned in a manner consistent with strangling or squeezing Alejo's upper body. Despite the presence and attempted intervention by the guards, Santiago continued to repeatedly attack Alejo, inflicting fatal injuries. Alejo died of manual strangulation. After the attack, Santiago made the highly incriminating admissions that he killed Alejo by choking him because he "wasn't paying his bills."

*Instructional Error and Ineffective Assistance*

Santiago contends that his counsel's stipulation resulted in the trial court having to give an "ill-advised" and confusing modification of the standard CALCRIM No. 3103 instruction. That instruction involves the People's burden of proof on a defendant's prior conviction. He claims the court's modification of this instruction focused the jury on his prior conviction for

8

attempted murder and, when coupled with his counsel's failure to object, it was prejudicial.

The trial court orally instructed jurors, in relevant part, "One of the things that you must do is determine . . . the nature of the sentence that the defendant was serving. . . . If you find that the defendant was previously convicted of a crime, the People must also prove that the defendant was sentenced to an indeterminate sentence of life and a determinate sentence of years. That's the requirement that *they need to prove* on this. One, that there was *a prior conviction* and that it was a *conviction* that carried this sort of sentence. The *People have the burden of proving* this allegation beyond a reasonable doubt. If the People have not met this burden, you must find that this allegation has not been met. And that goes as to Count 2. Because Count 2 refers specifically has an element, that is the status of the defendant serving a particular type of sentence." (Italics added.)

The stipulation and the CALCRIM No. 2720 instruction on section 4500 provided adequate guidance for the jury. Because those CALCRIM No. 2720 instructions on the charged offense were clear, we presume that jurors would easily understand them and follow them. (*People v. Gonzales*, *supra*, 51 Cal.4th at p. 940.)

The trial court's decision to also use the CALCRIM No. 3103 instruction on proof of prior crimes and its references to People's burden of proof on Santiago's prior conviction were not necessary. The alleged instructional error of providing such surplus language, however, " 'did not "vitiat[e]" ' " the jury's findings because jurors were properly instructed on all the required elements of the charged offenses. (*People v. Merritt*

9

(2017) 2 Cal.5th 819, 826; *People v. Cole* (2004) 33 Cal.4th 1158, 1208; *People v. Cain* (1995) 10 Cal.4th 1, 36 [surplus language would not mislead jurors who were otherwise properly instructed on the charged offenses]; *People v. Watson* (1956) 46 Cal.2d 818, 832.) There is no showing that had the court instructed the jury without the language Santiago highlights, there would be any reasonable probability of a different outcome. (*People v. Flood* (1998) 18 Cal.4th 470, 490.)

Moreover, as the People note, if this added language was prejudicial, it was prejudicial to the prosecutor, not the defense. It substantially increased the People's burden of proof on the section 4500 life sentence element even though both parties had already stipulated that Santiago had been convicted of the prior offense that subjected him to a life sentence. If anything, the possibility that the prosecution's burden was increased benefited Santiago. Santiago's counsel could not therefore be faulted for not objecting. (*People v. Maury* (2003) 30 Cal.4th 342, 421 [a defendant cannot "complain" about a jury instruction that is "unduly *favorable* to defendant"].) In addition, any error in giving this instruction was harmless given the compelling evidence of Santiago's guilt. (*People v. Cole, supra*, 33 Cal.4th at p. 1208.)

After reviewing all of Santiago's contentions, we conclude he has not shown grounds for reversal.

10

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

PERREN, J.

John D. Oglesby, Judge

Superior Court County of Kern

_____

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.