Filed 8/23/23  P. v. Ramirez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C096828 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CH037285 & 2019CR0022857) |
| v. | |
| JULIA RAMIREZ, | |
| Defendant and Appellant. | |

A jury found defendant Julia Ramirez guilty of bringing methamphetamine into a state prison.  On appeal, defendant contends the prosecutor committed multiple acts of misconduct in closing argument and the trial court failed to instruct the jury on all elements of bringing methamphetamine into a state prison.  We affirm because there was no prejudicial error.

FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged defendant with one count of bringing methamphetamine into a state prison.  (Pen. Code, § 4573; undesignated statutory references are to the Penal Code.)

1

The jury heard testimony that defendant visited her inmate boyfriend in jail. During the visit (a video of which was also played for the jury), defendant went to the bathroom. She then sat at a table with her boyfriend and put a coffee bottle to her mouth, though "not to a level" that one would expect to drink liquid. She appeared to move something from her mouth into the bottle. Defendant's boyfriend then drank from the bottle five times; the first four involved "hard attempt[s]" to swallow and the fifth "was not as exaggerated."

Defendant's boyfriend was placed on contraband watch. After he defecated, correctional officers recovered four bindles. Two of the bindles contained a "white crystalline substance." Officers tested one of the bindles, and it was presumptively positive for methamphetamine.

Sergeant Andrew Dohoda testified as an expert witness on "whether or not a quantity of methamphetamine is usable for purposes of consumption." Defendant did not object to his designation as an expert witness. Dohoda explained the different ways methamphetamine could be consumed by users. The amount of methamphetamine in one of the bindles was a "usable quantity of methamphetamine," or an amount that was sufficient for an inmate to manipulate for the purposes of consuming it. The amount that he removed from the bindle to test was also a "usable quantity."

Defendant testified in her own defense. She denied spitting any bindles into the bottle. Defendant had thyroid cancer, so she could take only small sips when drinking. The cancer prevented her from holding the four bindles in her mouth.

## DISCUSSION

### I

*Prosecutorial Misconduct*

Defendant contends the prosecutor committed eight acts of misconduct in closing argument. The Attorney General contends all but one of defendant's contentions are forfeited or waived on appeal because the opening brief lacks sufficient legal argument.

As we explain, we decline to consider some of defendant's arguments because they were forfeited, but we do exercise our discretion to consider those arguments that were insufficiently briefed and find those without merit.

A. *General Principles*

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44.)

"At closing argument a party is entitled both to discuss the evidence and to comment on reasonable inferences that may be drawn therefrom." (*People v. Morales, supra*, 25 Cal.4th at p. 44.) "Within the scope of permissible prosecutorial argument, a prosecutor is given wide latitude during argument ' " ' "as long as it amounts to fair comment on the evidence, which can include reasonable inferences, or deductions to be drawn therefrom . . . ." ' " ' " (*People v. Sanchez* (2014) 228 Cal.App.4th 1517, 1529.)

"As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion--and on the same ground--the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

B. *Alleged Instances of Misconduct*

1. *Incorrect Statement of Law as to Usable Amount*

Defendant contends the prosecutor defined "usable amount" incorrectly in closing arguments, because the definition did not include a requirement that the substance "be

3

enough [] to produce the narcotic effect."  Defendant points to CALCRIM No. 2304 that defines a "usable amount" as "a quantity that is enough to be used by someone as a controlled substance.  Useless traces [or debris] are not usable amounts.  On the other hand, a usable amount does not have to be enough, in either amount or strength, to affect the user."

The prosecutor began his closing remarks by explaining the elements of the crime.  In particular, the prosecutor linked the testimony of Sergeant Dohoda to the elements, saying, "You heard the testimony of one of the correctional officers, I think it was Officer Dohoda, about testing, slitting both bindles, comparing the contents, they both look like crystalline meth.  203 was tested.  It was methamphetamine.  It was tested by the lab. The lab tested it with a scientific instrument called gas chromatography mass spectrometry.  It tested positive for methamphetamine.  We have to show it's a usable quantity.  What we've proved is that any quantity that's sufficient to be manipulated for purposes of consumption is usable."

Defendant's appellate contention, that this was an incorrect statement of law, is not supported by the jury instruction he cites.  Nor, as the Attorney General notes, does applicable case law or the more recent CALCRIM No. 2749, which was drafted for the crime of bringing a controlled substance into a state prison, define usable quantity as defendant has described it.  (*People v. Polk* (2019) 36 Cal.App.5th 340, 349 [usable quantity defined as " 'quantity which could be potentiated by consumption in any of the manners customarily employed by users, rather than useless traces or debris of narcotic' "]; CALCRIM No. 2749 ["a usable amount does not have to be enough, in either amount or strength, to affect the user"].)  We thus reject this contention.

## 2. *Disparagement of Defense Counsel*

Defendant contends the prosecutor disparaged defense counsel during the closing argument by saying defense counsel "got [defendant]" "to say that the thyroid cancer had affected her mouth without any explanation as to why."

When discussing defendant's testimony, the prosecutor argued, "And then [defense counsel] on redirect examination got her to say that, well, somehow the thyroid cancer has affected her mouth. She never explained how. She never explained why. She never said I've got scar tissue in my mouth from the surgery on my throat. She never testified or explained how surgery on her throat decreased the volume of her mouth such that she couldn't put four bindles [into] her mouth." Defense counsel did not object.

Defendant has forfeited this challenge because defense counsel did not object or request a curative admonition. (*People v. Samayoa*, *supra*, 15 Cal.4th at p. 841.) Indeed, at this point in closing argument, defense counsel had not made *any* objections to the prosecutor's statements. There is therefore no basis for defendant's claim that he should be "excused from [the] necessity of repeated objections" because it would have been futile.

### 3. *Surveillance Video Statements*

Defendant contends the prosecutor referred to facts not in evidence by suggesting defendant's boyfriend was making incriminating statements in the surveillance video of the visit because the video showed his mouth moving, even though there was no trial testimony or audio as to the statements.

When discussing the video, the prosecutor noted, "you'll be able to watch on the video – I'm not going to play the video. You can watch it in deliberations if you want to. I think it's after the third or the fourth swallow, the defendant mouths some words. Now, if you as a jury are able to look at the video and conclude what those words are, you're allowed to . . . ." Defense counsel then objected, saying the argument assumed facts not in evidence and asked the jurors to "investigate things" on their own; counsel explained the specific statements made in the video were not in evidence, even if the video itself was. The trial court told the jury the video was in evidence and was available to review "for any and all evidentiary matter that you deem acceptable."

The prosecutor continued his argument, saying, "But if you look at the video and you believe that he is saying I got it this time, I got it –" before defense counsel again objected, saying the argument was asking the jury to make a conclusion based on something that was not in evidence. The trial court sustained the objection, saying the prosecutor should not characterize what had been said on the video. The prosecutor continued his discussion of the video, saying "I'm going to suggest to you that he did say something and it's incriminating." Defense counsel objected again, and the court sustained the objection again, while noting the jury was "allowed to review any and all of the contents on the video."

The trial court then had an unreported side bar with the parties and afterwards told the jury, "I'm simply going to reiterate, the video is in evidence. You have the ability to watch it once, twice, or several times. You have the ability to make any factual conclusions from which you observe on that video, okay."

Turning to defendant's argument that the prosecutor referred to facts not in evidence, we agree with the Attorney General that any error was harmless. Each time the prosecutor suggested he understood what defendant's boyfriend was saying, the trial court sustained defense counsel's objection and instructed the jury that the video was in evidence and could be viewed by the jury and used to draw factual inferences based on the viewing. The court further instructed the jury that it could consider only "evidence presented during trial in this court" and "[n]othing that the attorneys say is evidence." The trial court's actions therefore rendered any error in the prosecutor's conduct harmless. (*People v. Rivera* (2019) 7 Cal.5th 306, 335.)

### 4. *Correctional Officer Credibility*

Defendant contends the prosecutor erroneously argued correctional officers are more credible than other witnesses.

In his closing argument, defense counsel argued the officers who had testified were speculating as to what they observed on the surveillance video. He told the jurors to

evaluate the video based on what they saw, the testimony of the officers, and defendant's testimony. He explained that this was the reason the jurors were asked in voir dire whether they would find law enforcement testimony inherently more credible than layperson testimony.

In rebuttal, the prosecutor argued the jurors "certainly can consider the officers to be more credible in certain respects," explaining correctional officers are trained "to observe, to take notes, to write a report, [and] to document things," all of which were factors that could be used to evaluate credibility. Defense counsel objected, saying the argument contradicted the jury instructions, and the court permitted the prosecutor to finish, "subject to a motion to strike and instruct."

The prosecutor elaborated, saying the officers were more credible not simply because they are peace officers, but because they had training in observation and evidence gathering, which the jury could consider. Moreover, the officers had no reason to lie, while defendant did.

This argument was not misconduct. "The prosecutor is generally precluded from vouching for the credibility of her witnesses, or referring to evidence outside the record to bolster their credibility or attack that of the defendant." (*People v. Anderson* (1990) 52 Cal.3d 453, 479.) Where, however, the prosecutor limits his or her remarks to the facts of the record or "inferences reasonably drawn therefrom," no misconduct occurs. (*Ibid.*) Here, the prosecutor's comments noted the experience and training of the officers, as well as their lack of motive to lie, which were warranted by the evidence, and not merely by the prosecutor's personal belief or a belief that correctional officers are inherently more credible. (*Id.* at pp. 478-479.)

### 5. *Comments on Defendant's Testimony*

Defendant contends the prosecutor committed misconduct when he argued defendant "failed to explain why she could not swallow because of the thyroid cancer," essentially asserting she had the burden to prove her innocence.

In his rebuttal argument, the prosecutor expressed confusion about defendant's claims that she could not swallow because of her thyroid cancer saying, "our theory of the case doesn't require that she be able to swallow." The prosecutor asked her to explain why the surgery affected the volume of her mouth, but "[s]he never gave an answer." Defense counsel objected, saying the prosecutor was misstating the evidence and the prosecutor asked to rephrase his statement, which the court allowed.

The prosecutor then rephrased, saying, "She never explained. She never gave – She gave an explanation that you should consider as horribly inadequate. She didn't say I have scar tissue. I think she said something about, well, I can't breathe or – I can't breathe or something. How did surgery on your thyroid affect your ability to breathe based on the volume of something in your mouth? That was never explained." Defense counsel objected again, saying the prosecutor was misstating the testimony. The court overruled the objection.

There was no misconduct here, because the prosecutor did not misstate the evidence or suggest defendant had the burden of proof. "A prosecutor may fairly comment on and argue any reasonable inferences from the evidence. [Citation.] Comments on the state of the evidence or on the defense's failure to call logical witnesses, introduce material evidence, or rebut the People's case are generally permissible." (*People v. Woods* (2006) 146 Cal.App.4th 106, 112.) The prosecutor's comments simply rebutted defendant's argument that she could not fit the four bindles in her mouth by pointing out that no evidence supported that argument. He did not suggest that defendant was required to prove herself innocent. Similarly, the prosecutor's characterization of defendant's answers as "horribly inadequate" was a permissible comment on her testimony, as were his rhetorical questions about the lack of explanation for the decreased volume in her mouth.

### 6. *Characterization of Defense Counsel's Argument*

Defendant contends the prosecutor disparaged defense counsel by saying one of his arguments was "patently unreasonable and ridiculous."

The prosecutor offered an example to illustrate the concept of circumstantial evidence, saying if there was a wet spot in front of his desk, it would be circumstantial evidence that somebody spilled a water bottle. In response, defense counsel argued this example was flawed because it could also be reasonably inferred that the roof is leaking or that someone walked in snow then dripped the water onto the floor. In rebuttal, the prosecutor said defense counsel's argument was "an example of a patently, unreasonable, ridiculous argument that's brought to bear in the service of getting you to accept the unreasonable as reasonable. I just want you to understand that for what it is."

This was not misconduct, because the prosecutor's statements did not "involve such forbidden prosecutorial tactics as falsely accusing counsel of fabricating a defense or otherwise deceiving the jury." (*People v. Stitely* (2005) 35 Cal.4th 514, 560 [no misconduct where prosecutor called defense counsel's argument "ridiculous" and "outrageous"].) Rather, the prosecutor's arguments were "aimed at [defense] counsel's closing argument and statement," and "permissibly criticize[d] [defense] counsel's tactical approach." (*Ibid.*)

### 7. *Assertion of Guilt*

Defendant contends the prosecutor committed misconduct when the prosecutor claimed defendant "was guilty when she walked into this courtroom."

In rebuttal, the prosecutor explained circumstantial evidence and said, "if the reasonable deduction points to guilt that she knew it was contraband, that she's the source of the contraband of the methamphetamine in his fecal matter, that's the only reasonable conclusion you must accept it. [Defendant] is guilty. She was guilty when she walked [into] this courtroom." Defense counsel objected and the trial court sustained the objection and struck the last two sentences of the argument. The prosecutor continued

9

his argument, saying, "The evidence shows that on the day of this offense, July the 14th, 2019, she committed the crime charged." Defense counsel objected again, and the court overruled the objection.

The Attorney General agrees it was misconduct to tell the jury defendant was guilty before the jury deliberated on the case but argues the error was harmless. We agree with the Attorney General. The error was harmless for four reasons. One, the trial court sustained the objection and struck the offending statements. Two, the court instructed with CALCRIM Nos. 103 and 220 that defendant was presumed innocent. We presume the jury followed those instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 436.) Three, the prosecutor made multiple statements in his closing argument acknowledging that he was required to prove defendant's guilt beyond a reasonable doubt. And four, there was overwhelming evidence of defendant's guilt, including video evidence of the crime. Defendant has not shown that this isolated, stricken statement rendered her trial "fundamentally unfair" or that she would receive a "more favorable result . . . absent the alleged objectionable argument," and thus has not established prejudice under any standard. (*People v. Fernandez* (2013) 216 Cal.App.4th 540, 564.)

### 8. *Appeal to Civic Duty*

We then turn to defendant's claim that the prosecutor improperly appealed to the jurors' civic duty by telling them they should convict the defendant for bringing contraband into a prison.

The prosecutor concluded his rebuttal by saying, "And so the evidence proves that she's guilty. And that evidence is based on events that occurred two years ago that we presented in this courtroom today. And it is appropriate and proper and right and just to hold her accountable. When people commit crimes of this nature, they deserve to be convicted." Defense counsel objected, and the trial court overruled the objection.

This was appropriate argument. The prosecutor referenced the evidence and argued that the evidence showed defendant was guilty, so she should accordingly be

10

convicted. Nothing in this argument encouraged jurors to disregard their own judgment as to the evidence or otherwise reach a verdict on an objectionable basis. (*People v. Adanandus* (2007) 157 Cal.App.4th 496, 511-513 [argument urging jury to restore law and order to the neighborhood not misconduct because it was "an appeal for the jury to take its duty seriously, rather than efforts to incite the jury against defendant"].)

Finally, defendant contends the cumulative effect of the asserted errors deprived her of her due process rights. We see no " 'reasonable possibility' that the jury would have reached a result more favorable . . . absent a combination of errors," however. (*People v. Poletti* (2015) 240 Cal.App.4th 1191, 1216.) Of the eight claimed errors, five did not involve misconduct, two involved harmless error, and one was forfeited. We see no reason, and defendant makes no showing, why these errors would be any more prejudicial together than in isolation. We therefore reject defendant's claim of cumulative error.

## II

### *Jury Instructions*

Defendant contends the trial court failed to instruct the jury that it was required to "determine whether the amount of methamphetamine was a usable amount," citing *People v. Blanco* (2021) 61 Cal.App.5th 278 (*Blanco*). The Attorney General agrees the court erred but argues it was harmless. We agree with the Attorney General.

A. *Additional Background*

The court instructed the jury as follows:

"The defendant is charged in Count one with bringing, sending or assisting in bringing or sending, a controlled substance into a penal institution in violation of Penal Code section 4573.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant unlawfully brought, sent or assisted in bringing or sending a controlled substance into a penal institution;

11

"2. The defendant knew that she was bringing, sending or assisting in assisting in [*sic*] bringing or sending a controlled substance into a penal institution;

"AND

"3. The defendant knew that the substance was a controlled substance.

"A *penal institution* is a state prison or place where prisoners of the state prison are located under the custody of prison officials, officers, or employees.

"Methamphetamine is a controlled substance[.]"

B.  *Analysis*

" 'The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense.' (*People v. Merritt* (2017) 2 Cal.5th 819, 824 [216 Cal. Rptr. 3d 265, 392 P.3d 421].)  'All criminal defendants have the right to "a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." ' (*Ibid.*)" (*Blanco, supra*, 61 Cal.App.5th at p. 283.)

In *Blanco, supra*, 61 Cal.App.5th 278, the defendant was convicted of bringing methamphetamine into a county jail. (*Id.* at p. 280.)  On appeal, the court considered whether section 4573 required the trial court to instruct the jury that the controlled substance at issue must have been "of an amount sufficient for use." (*Id.* at p. 283.)  Considering the legislative history of the statute, the court concluded "when the Legislature wrote, in section 4573, 'any controlled substance, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code,' it was referring to the full definition of prohibited possession, which means possession of a usable quantity of the controlled substance. (*Id.*, subd. (a).)" (*Blanco*, at p. 286.)  Thus, the court concluded, "the Legislature intended for a usable quantity to be an element of section 4573." (*Ibid.*)

The *Blanco* court then considered whether the trial court's failure to instruct on that element was prejudicial, observing it was required to assess " 'whether it is clear

12

beyond a reasonable doubt that a rational jury would have rendered the same verdict' if it had been instructed that a usable quantity is an element of section 4573." (*Blanco, supra*, 61 Cal.App.5th at p. 287.)  There, the evidence at trial established that 0.1 gram of methamphetamine was a usable amount, but that a witness had testified that the methamphetamine possessed by defendant had only weighed 0.01 gram.  (*Id.* at p. 288.)  The court therefore found the error prejudicial.  (*Id.* at p. 289.)

This case is different because the evidence here presented no possibility of a different verdict had the jury been properly instructed.  This is for two reasons.

First, the prosecutor argued the usable quantity element in his closing argument, telling the jury "[w]e have to show it's a usable quantity."  He argued the total weight of the bindle the officer tested was 2.238 grams and that the smaller amount that was removed for testing was still a usable quantity.  Thus, the prosecutor reasoned, there could be no doubt the larger bindle itself was also a usable quantity.

Second, the evidence that a usable quantity was present was overwhelming and undisputed.  The court designated Sergeant Dohoda as an expert on whether a quantity of methamphetamine was usable without objection from defendant.  Consistent with the argument the prosecutor made in his closing argument, the sergeant testified the amount in the bindle and the amount removed for testing were usable quantities.  Testimony also substantiated the prosecutor's argument as to the weight of the bindle.  Defendant did not dispute the quantity of the methamphetamine; defendant's theory of the case was that she simply had not introduced the drugs into the prison.  As such, it is clear beyond a reasonable doubt that a rational jury would still have rendered the same verdict even if it had been properly instructed.

One final point.  Defendant contends the prosecution failed to prove that a usable quantity was present, pointing primarily to Sergeant Dohoda's qualifications as an expert witness.  As noted above, however, there was ample evidence to meet the usable quantity

13

requirement.  We thus reject defendant's contention that Sergeant Dohoda's testimony was insufficient.

## DISPOSITION

The judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
DUARTE, Acting P. J.

/s/
BOULWARE EURIE, J.

14