Filed 9/29/23  P. v. Russell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C097571 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F00798) |
| v. | |
| TITENESHA LANAE RUSSELL, | |
| Defendant and Appellant. | |

In 2006, a jury found defendant Titenesha Lanae Russell guilty of premeditated attempted murder (Pen. Code, §§ 664, 187)[1] and other crimes.  The trial court sentenced her to life in prison.  In May 2022, Russell petitioned for resentencing under section 1172.6.  The trial court denied the petition, finding Russell ineligible for relief because she was convicted as an aider and abettor who intended to kill, not as an aider and abettor

---

[1]  Undesignated statutory references are to the Penal Code.

1

under the natural and probable consequences doctrine.  On appeal, Russell contends the trial court erred.  We affirm.

BACKGROUND

In 2007, a panel of this court affirmed Russell's underlying convictions and aggregate sentence on five offenses:  premeditated attempted murder of a seven-month-old fetus while personally using a deadly and dangerous weapon, assault with a deadly weapon by means of force likely to cause great bodily injury, kidnapping to commit robbery, attempted robbery, and conspiracy to murder a fetus.  (*People v. Curry* (2007) 158 Cal.App.4th 766, 771-772 (*Curry*).)

Those offenses arose out of Russell's participation in the September 2004 beating and kidnapping of the pregnant ex-girlfriend of one of Russell's codefendants.  Relevant here, after two of Russell's codefendants decided to assault the victim to trigger a miscarriage, Russell agreed to help.  When the moment arrived in a public park, Russell punched the victim in the face, and a codefendant kicked the victim in her side.  As Russell and a codefendant drove away from the scene of the attack, the ex-boyfriend codefendant called the codefendant whom Russell was driving with and told her to return and " 'finish the job.' "  When the codefendant asked if the objective was to kill the victim, the ex-boyfriend said, " 'just the baby.' "  Russell and the codefendant returned to the park, where Russell hit the victim in the head with a flashlight, and a codefendant kicked the victim as she lay on the ground.  The second assault left the victim unconscious.  (*Curry*, *supra*, 158 Cal.App.4th at pp. 773-774, 792.)

The jury found one of Russell's codefendants guilty of the same offenses it found Russell guilty of, including the special allegation that the attempted murder was committed with premeditation.  (*Curry*, *supra*, 158 Cal.App.4th at pp. 772.)

Russell appealed, raising multiple claims, including a challenge to the premeditation instruction for premeditated attempted murder on the basis that "these instructions improperly 'allowed [the] jurors to attach a premeditation finding to [her]

2

attempted murder charge, even if they explicitly found she did not personally premeditate.' " The *Curry* panel rejected that challenge given the case law, the jury instructions, and the jury's verdicts. (*Curry*, *supra*, 158 Cal.App.4th at p. 791.)

The *Curry* panel explained that *People v. Lee* (2003) 31 Cal.4th 613 stands for the proposition that "a person may be convicted of premeditated attempted murder as an aider and abettor even if he or she did not personally act with willfulness, deliberation and premeditation." (*Curry*, *supra*, 158 Cal.App.4th at p. 791; see *Lee*, at p. 627 ["section 664(a) properly must be interpreted to require only that the murder attempted was willful, deliberate, and premeditated, but not to require that an attempted murderer personally acted with willfulness, deliberation, and premeditation, even if he or she is guilty as an aider and abettor"].)

As for the instructions and verdicts, the *Curry* panel observed that the trial court instructed Russell's jury that in order to find true the special allegation of premeditation and deliberation, the " 'aider and abettor must share the intent to kill.' However, when instructing the jury [on] attempted murder as a natural and probable consequence of felony assault, the court did not describe the offense as *premeditated* attempted murder." (*Curry*, *supra*, 158 Cal.App.4th at p. 791, fn. omitted.) Accordingly, the *Curry* panel concluded Russell's challenge misread the instruction, because the jury had to find that Russell " 'share[d] the intent to kill.' A jury could not make a true finding on the special allegation on premeditation if it determined that Russell only intended to aid and abet a perpetrator in felony assault without harboring the intent to kill [the victim's] unborn child." (*Ibid.*)

In 2020, a panel of this court affirmed the trial court's denial of Russell's petition for resentencing pursuant to former section 1170.95, now renumbered as section 1172.6 (Stats. 2022, ch. 58, § 10). (*People v. Russell* (Sept. 18, 2020, C090723) [nonpub. opn.].)

3

In doing so, the panel held that conclusions in *Curry* regarding Russell's intent to kill were "law of the case" and binding. (*People v. Russell, supra*, C090723.)[2]

In May 2022—after the Legislature enacted Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, §§ 1, 2), which made explicit that some attempted murder convictions are eligible for resentencing—Russell filed a new petition for resentencing. She alleged she was charged with attempted murder under the natural and probable consequences doctrine; she was convicted of attempted murder; and she could not now be convicted of attempted murder. After briefing from the parties, the trial court concluded Russell failed to demonstrate a prima facie case for relief under section 1172.6 and denied the petition. Relying on *Curry* in its December 2022 oral ruling, the trial court explained that "the record of conviction established that [Russell] was convicted as a direct perpetrator who intended to kill [the victim's] unborn fetus, not as an aider and abettor under the natural and probable consequences doctrine." Russell appealed.

DISCUSSION

I

*Legal Background*

Senate Bill No. 1437 (2017-2018 Reg. Sess.), which became effective on January 1, 2019, "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It also added former section 1170.95

---

[2] In that earlier case, the trial court ruled that attempted murder was not a crime the new resentencing scheme contemplated. (*People v. Russell, supra*, C090723.) The 2020 panel concluded that even if the trial court erred in so ruling, the error was harmless in light of the conclusions in *Curry*. (*Ibid*.)

(now section 1172.6), which allows those convicted of attempted murder under the natural and probable consequences doctrine[3] to petition the trial court to vacate the conviction and resentence the defendant.  (§ 1172.6, subd. (a); Stats. 2018, ch. 1015, § 4.)  "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause."  (§ 1172.6, subd. (c).)

The prima facie inquiry under section 1172.6, subdivision (c) is "limited." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.)  " ' "[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' "  (*Ibid*.) Although the court may rely on the record of conviction, including a prior appellate court opinion, in determining whether a defendant has made a prima facie showing, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Id*. at p. 972.)  When an appellate court assesses the jury verdicts to determine what findings they reflect, it is "not engaging in appellate factfinding." (*People v. Merritt* (2017) 2 Cal.5th 819, 830; cf. *Lopez*, *supra*, 14 Cal.5th at pp. 580-581, 588-589 [citing *Merritt* for the proposition that "alternative-theory" instructional errors— which occur when a jury is instructed with two theories of an offense, a legally valid one and a legally invalid one—may be found harmless if the reviewing court determines beyond a reasonable doubt, based on the jury's actual verdict and the evidence at trial, that the presentation of the invalid theory to the jury made no difference].)

---

[3] " 'There are two distinct forms of culpability for aiders and abettors.  "First, an aider and abettor with the necessary mental state is guilty of the intended crime.  Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.' " ' "  (*In re Lopez* (2023) 14 Cal.5th 562, 579 (*Lopez*).)

5

## II

### *Analysis*

We agree with the trial court that Russell is ineligible for resentencing as a matter of law because the jury's verdicts establish that she was convicted as an aider and abettor *who intended to kill* the victim's fetus, not as an aider and abettor under the natural and probable consequences doctrine. (§ 1172.6, subd. (a); *People v. Merritt*, *supra*, 2 Cal.5th at p. 830.)

When the trial court instructed Russell's jury on the special allegation of premeditation, it explained that an aider and abettor had to share the intent to kill. And when the trial court instructed the jury on attempted murder as a natural and probable consequence of felony assault, it "did not describe the offense as *premeditated* attempted murder." (*Curry*, *supra*, 158 Cal.App.4th at p. 791.) Thus, when the jury rendered its guilty verdict on premeditated attempted murder, it necessarily found that Russell shared a codefendant's intent to kill. (*Ibid.* [a jury could not have made "a true finding on the special allegation on premeditation if it determined that Russell only intended to aid and abet a perpetrator in felony assault without harboring the intent to kill"].) That the jury was instructed on the natural and probable consequence doctrine, by itself, does not make her eligible for relief, because it is clear presentation of that theory to the jury "made no difference." (*Lopez*, *supra*, 14 Cal.5th at p. 589.) The premeditated attempted murder finding required the jury to find her guilty as an aider and abettor who shared the intent to kill, not as an aider and abettor under the natural and probable consequences doctrine— the only viable avenue for eligibility for resentencing on an attempted murder conviction. (See *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 823-824 [*Lee* remains good law, and a person convicted of premeditated attempted murder as an aider and abettor but who did not personally act with premeditation is ineligible for resentencing relief even after the enactment of Sen. Bill No. 775].) Accordingly, because Russell is not "[a] person convicted of . . . attempted murder under the natural and probable consequences

doctrine," she does not meet the requirements of section 1172.6, subdivision (a). (See *People v. Smith* (2014) 60 Cal.4th 603, 611 [natural and probable consequences doctrine applies when person aids and abets one crime and a coparticipant commits another crime].)

Russell's contentions and the cases relied on in briefing and at oral argument do not alter this dispositive calculus. As Russell points out, our Supreme Court recently issued two opinions explaining why true findings on allegations that do not encompass all the elements of murder do not preclude reversal of murder convictions for instructional error as a matter of law. In *In re Ferrell* (2023) 14 Cal.5th 593, the People argued the jury's true finding on the firearm enhancement under Penal Code section 12022.53, subdivision (d), combined with the evidence presented at trial, proved that Ferrell committed implied malice murder and accordingly that any instructional error allowing jurors to consider an invalid second degree felony-murder theory was necessarily harmless. (*Ferrell,* at p. 603.) Our high court rejected this argument because evidence sufficient to prove the firearm allegation did not require proof that the defendant discharged the firearm with a subjective awareness of the risk that he might kill someone or with conscious disregard for life; thus, certain elements required to prove implied malice murder had not necessarily been found by the jury beyond a reasonable doubt. (*Id.* at p. 604.)

In *Lopez*, our high court held that the instructing of the jury with the now invalid theory of aiding and abetting natural and probable consequences murder was not rendered harmless by the fact that the same jury found the gang special circumstance to be true, even though the gang special circumstance required the jury to find Lopez intended to kill. Again, certain elements that were necessary to prove implied malice murder had not necessarily been found by the jury beyond a reasonable doubt, including that Lopez "aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or

7

facilitating its commission." (*Lopez, supra*, 14 Cal.5th at p. 587.)  The *Lopez* court distinguished cases, like this one, where the jury had also found the defendant guilty of conspiracy to commit murder, noting:  "*Unlike the conspiracy instruction*, the gang-murder special-circumstance instruction does not necessarily establish all of the elements of directly aiding and abetting first degree murder.  Thus, it does not in and of itself show the jury made the necessary findings for a valid theory."  (*Id*. at p. 588, italics added.)[4]

Here, unlike the inference rejected in *Ferrell*, we do not infer Russell's jury necessarily found all the elements now required for her attempted murder conviction by virtue of her conviction for personal use of a weapon.  Nor, as in *Lopez*, do we infer the jury necessarily found all the required elements by virtue of a true finding on a special circumstance that separately required Russell to harbor the intent to kill.  Further, unlike in *Lopez*, here Russell was found guilty of conspiracy to commit murder.  This verdict required the jury to find that Russell had the required knowledge of unlawful purpose (of the perpetrator, i.e., to commit murder) and had the intent or purpose of committing, encouraging, or facilitating the murder's commission.  (See *Lopez, supra*, 14 Cal.5th at pp. 587-588.)

Finally, and as discussed *ante,* here Russell was convicted of premeditated attempted murder which, as instructed in this case, required the jury find that Russell shared the intent of the perpetrator to convict her as an aider and abettor.  Although

---

[4] Our high court explained that " 'where two or more persons conspire to commit murder — i.e., intend to agree or conspire, further intend to commit the target offense of murder, and perform one or more overt acts in furtherance of the planned murder — each has acted with a state of mind "functionally indistinguishable from the mental state of premeditating the target offense of murder." [Citation.]  The mental state required for conviction of *conspiracy* to commit murder necessarily establishes premeditation and deliberation of the target offense of murder — hence all murder conspiracies are conspiracies to commit first degree murder.' " (*Lopez, supra*, 14 Cal.5th at p. 588, italics added.)

Russell argues that her jury "could have found" that she "aided and abetted attempted murder by aiding and abetting assault" or that she "personally used a weapon while committing assault[,]" these hypotheticals do not account for the separate finding by the jury, in the context of further defining the attempted murder that it had already found Russell committed, of her shared intent to kill. Nor do they account for the conspiracy conviction.

Russell also argues that perhaps the jury found "she intended to kill, but not necessarily while she committed assault[,]" pointing out that the instruction on premeditation and deliberation "did not require any accomplice to intend to kill while they were committing the acts that supposedly aided and abetted the direct perpetrator." But the law requires no such parsing and Russell cites no cases supporting her argument that it does. Indeed, current law does not. (See *People v. Lee, supra*, 31 Cal.4th at p. 627; *People v. Rodriguez, supra*, 75 Cal.App.5th at pp. 823-824.) Russell relies mainly on *Ferrell* and *Lopez* to make this argument; however, as explained, those cases are clearly distinguishable. Further, Russell's jury was instructed that to find her guilty of conspiracy to murder the fetus, it needed to find that she "intended to agree and did agree" to commit murder, and "at the time of the agreement," that she and another member of the conspiracy "intended that one or more of them would commit murder." Tellingly, the jury was also instructed that if it determined Russell had withdrawn from the conspiracy, it *must* find her *not guilty* of the conspiracy as well as "of any additional acts committed after [she] withdrew." The jury's finding of guilt as to the assault charge is thus also a finding that the conspiracy—founded on the agreement and intent to commit murder—continued, as did Russell's participation therein and her corresponding intent and objective (to kill), throughout the commission of the entire attack on the victim and her fetus.

The jury found Russell guilty of conspiracy to murder the fetus, as well as the attempted premeditated murder of the fetus, and the jury's instructions and corresponding

9

findings, amply supported by the evidence, reflect Russell's established, agreed-upon, and ongoing intent to kill the fetus. As a matter of law, Russell simply cannot show that she was convicted under an invalid theory of murder, because the totality of the instructions, evidence, and verdicts prove that the jury made the findings required to convict her under the valid theory.[5]

## DISPOSITION

The order denying Russell's section 1172.6 petition for resentencing is affirmed.

_____/s/_____
BOULWARE EURIE, J.

We concur:

_____/s/_____
DUARTE, Acting P. J.

_____/s/_____
KRAUSE, J.

---

[5] While the People in their brief invoked the "law of the case" doctrine and did not discuss at length Russell's opening brief contentions, we do not find they thereby conceded that Russell's appeal has merit as Russell's briefing suggests. Even if we did so find, we would not be bound by such a concession. (See *People v. Hawkins* (2012) 211 Cal.App.4th 194, 202-203 [disagreeing with the People's concession and citing cases for the proposition courts need not accept the People's concessions].)